UNITED STATES DISTRICT COURT

DISTRICT OF VERMONT

JAMES EHLERS, on behalf of himself and all
others similarly situated,

      Plaintiff,

      v.

BEN & JERRY'S HOMEMADE INC., and
CONOPCO INC. d/b/a UNILEVER UNITED
STATES,

      Defendant.

Case No. _____2: 19 · Cv - 194_____

## CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff James Ehlers, on behalf of himself and all others similarly situated, alleges, with

personal knowledge as to his own actions, and upon information and belief as to those of others,

the following against Defendants Ben & Jerry's Homemade Inc. and Conopco Inc. d/b/a Unilever

United States (collectively, "Unilever" or "Defendants"):

### NATURE OF THE ACTION

1.      This is a proposed class-action complaint brought on behalf of one class and one

subclass (further defined *infra*), comprising consumers who purchased Ben & Jerry's ice cream

products (the "Products," as further defined below) that are deceptively labeled and marketed.

2.      Ben & Jerry's Homemade Inc., founded by Ben Cohen and Jerry Greenfield in 1978

in Burlington, came to prominence during the 1980s and 1990s as a socially conscious, Vermont-

based company. Consumers flocked to the brand and all that it represented, to the benefit of

Vermont dairies and the local economy.

3.      In 2000, an operation of the Anglo-Dutch multinational food conglomerate

Unilever, Conopco Inc. d/b/a Unilever United States, acquired Ben & Jerry's Homemade Inc.

4.      Upon information and belief, the goodwill generated by Ben & Jerry's prior reputation for being socially and environmentally conscious was a valuable and significant component of Unilever's acquisition of the brand, allowing Unilever to capitalize on a growing market of conscious consumers.

5.      Since the acquisition, Ben & Jerry's Homemade Inc. is no longer the independent Vermont company of its origins, and neither Ben Cohen nor Jerry Greenfield has any role in its day-to-day management, despite their images continuing to appear on packaging of Ben & Jerry's Products.

6.      To the detriment of consumers, operations and marketing for the Ben & Jerry's brand are very different as a part of multinational Unilever than they were when Ben & Jerry's Homemade Inc. was run in Vermont by Mr. Cohen and Mr. Greenfield. Nevertheless, Unilever continues to capitalize on the goodwill that Ben & Jerry's earned in Vermont and nationwide during its earlier decades.

7.      During the past several years, Unilever has breached consumer trust by representing the Ben & Jerry's Products as being made with milk and cream sourced exclusively from "happy cows" on Vermont dairies that participate in a special, humane "Caring Dairy" program. Unilever has provided consumers with specific, fact-based requirements that it says these "Caring Dairy" farms meet.

8.      In reality, contrary to the message knowingly conveyed by Unilever to consumers, only a minority percentage of the milk and cream in the Products actually is sourced from these "happy cows" on "Caring Dairy" farms; the remaining milk and cream originates from factory-style, mass-production dairy operations, exactly what consumers who choose Ben & Jerry's

- 2 -

Products would like to avoid.

9.      Vermont products are renowned, in Vermont and across the country. The representation that the milk and cream in these Ben & Jerry's Products originates exclusively from "happy cows" on "Caring Dairy" farms is material to consumers who choose the Products, and who view Ben & Jerry's Homemade Inc. as a socially conscious, independent Vermont company. The reputation of Ben & Jerry's Homemade Inc. draws consumers who see these representations as material.

10.     Unilever's misrepresentations about milk and cream sourced exclusively from "happy cows" on "Caring Dairies" prompt consumers to buy more Ben & Jerry's Products, and to pay more for them than they otherwise would.

11.     Plaintiff Ehlers, like other reasonable consumers who see Unilever's representations about milk and cream sourced exclusively from "happy cows" on "Caring Dairy" farms, did not expect the Products to be made with dairy produced on regular factory-style, mass-production dairy operations.

12.     By deceiving consumers about the true nature of the Ben & Jerry's Products, Unilever is able to sell a greater volume of the Products, to charge higher prices for the Products, and to take away market share from competitors, thereby increasing its own sales and profits.

13.     Because Unilever's labeling and advertising of the Ben & Jerry's Products are false and misleading to reasonable consumers, Plaintiff Ehlers brings this case on behalf of himself and the members of the class and subclass seeking injunctive and monetary relief, as set forth more fully below.

## PARTIES

14.     Plaintiff James Ehlers is a resident of Winooski, Vermont, and a long-time

purchaser of Ben & Jerry's Products. During the class period (as further defined below), Plaintiff Ehlers has purchased the Phish Food, One Love, Americone Dream, Tonight Dough, Chocolate Chip Cookie Dough, Mint Chocolate Cookie, S'Mores, and New York Super Fudge Chunk varieties of Ben & Jerry's Products.

15.     Plaintiff Ehlers has purchased these Products from his local Shaw's supermarket, 66 Mountain View, Colchester, Vermont.

16.     When he purchased these Products, Plaintiff Ehlers did so in reliance on the label representations and the website to which the label directed him. Plaintiff Ehlers read the written representations about "happy cows" on "Caring Dairy" farms and watched the "Caring Dairy" video presented on the Ben & Jerry's website that Unilever maintains. Plaintiff Ehlers understood the representations to mean that the Ben & Jerry's Products he purchased were made with milk and cream sourced exclusively from these "happy cows" on "Caring Dairy" farms.

17.     Defendant Ben & Jerry's Homemade, Inc. is a Vermont corporation with its principal place of business in Burlington, Vermont. It is a wholly owned subsidiary of Defendant Conopco Inc.

18.     Defendant Conopco Inc., doing business as Unilever USA, is a New York corporation with its principal place of business in Englewood Cliffs, New Jersey.

19.     Defendants manufacture and/or cause the manufacture of the Ben & Jerry's Products, and market, distribute, and sell the Products throughout the United States, including in Vermont.

## SUBSTANTIVE ALLEGATIONS

20.     In recent years, consumers have grown more concerned about health, sustainability, and animal welfare, leading them to consider how their food is produced. This increased

consideration of food production helped Ben & Jerry's brand, which presented itself as a socially conscious and environmentally responsible brand, to thrive.

21.     Consumers now actively seek products that provide assurances regarding animal welfare, and consumers (as Unilever knows) are willing to pay more for products marketed in this way than they are willing to pay for competing products that do not provide assurances about animal welfare.

22.     Unilever manufactures and markets a variety of Ben & Jerry's Ice Cream Products (the "Products").[1]

23.     Unilever represents to consumers that the Products are made from milk produced by "happy cows," and directs consumers to a website to read that the "happy cows" are raised on "Caring Dairy" farms, which according to Unilever must meet specific, verifiable requirements. The "happy cows" packaging leads consumers to believe, and the website referenced on the packaging has explicitly stated, that the requirements of the "Caring Dairy" program apply to all dairies that supply milk and cream for the Ben & Jerry's Products.

## I.     The Reality of the Milk Sourced for the Products Renders the Ben & Jerry's Advertising False and Deceptive.

24.     In contrast to what Unilever has told consumers, the Products are made from a mixture of (1) milk that comes from farms participating in the "Caring Dairy" program and (2) milk that comes from cows on factory-style, mass-production dairy operations. Unbeknownst to consumers who believe they are supporting exclusively "Caring Dairy" farms (and the original Ben & Jerry's ethos), Unilever is misleading them to use their patronage to support factory-style,

---

[1] Ben & Jerry's may discontinue offering some Products and regularly introduces new products. Plaintiffs Ehlers and Wong-Lee reserve the right to add or remove products to the definition of "Products" as they become known.

Ben & Jerry's ethos), Unilever is misleading them to use their patronage to support factory-style, mass-production dairy operations.

 25. The packaging of the Products, signage in Ben & Jerry's retail locations, and take-away cups from retail locations present the Products as made with milk produced by "happy cows," featuring, among other representations, green fields, blue skies, and cartoon depictions of happy animals. Because they are prominent on packaging, these representations are necessarily seen by retail purchasers of the Products.





26.     The packaging, with its "happy cow" assurances, prominently directs purchasers to find more about the meaning of these assurances on the Ben & Jerry's website, *i.e.*, to "learn more at benjerry.com," the address of which is prominently featured on the Product packaging.

27.     On the website to which the packaging directs purchasers, Unilever explains that the "happy cows" are part of a "Caring Dairy" program, "a unique program that's helping farmers move toward more sustainable practices on the farm."[2]

28.     The "Caring Dairy" representations have been supported with assurances of "values-led sourcing" for the Ben & Jerry's Products and "finding ways to reduce the

_____

[2]     Ben & Jerry's Website, "How We Do Business," https://www.benjerry.com/values/how-we-do-business#ingredients (last visited Oct. 10, 2019).

environmental impact of our business."[3]

29.     Until recently, and during the class period, Unilever's Ben & Jerry's website—the address of which is displayed to explain the "happy cows" representation—told consumers that the "Caring Dairy" program is "required for all farmers." Unilever appears to have removed this representation only after a non-profit organization sued Ben & Jerry's in Washington, D.C. Superior Court, alleging misrepresentation.

# Caring Dairy Standards

  

**Basic standards for being a Caring Dairy farmer (required for all farmers)**

The basic standards are specific to Cow Care, Planet Stewardship, and the Farmer & Farm Worker. In order to be a Caring Dairy farmer, all these standards must be met.  All farms will undergo a third party verification by Where Food Comes From, to evaluate how each farm is meeting the required Standards.  For a farm to be considered a Caring Dairy farm, they must meet the Basic Standards for participation.  From there, farms can strive for Silver or Gold level recognition and received a larger compensation for their achievement.

Unilever's Ben & Jerry's website, "Caring Dairy Standards," https://www.benjerry.com/whats-new/2016/caring-dairy-standards (visited July 9, 2018).

---

[3] Screenshot of Unilever's Ben & Jerry's website, "If It's Melted It's Ruined," WaybackMachine (Aug. 14, 2019), https://web.archive.org/web/20190814192535/https://www.benjerry.com/values/issues-we-care-about/climate-justice.

new/2016/caring-dairy-standards (visited July 9, 2018).

30.     According to Unilever's Ben & Jerry's website explaining the "happy cows," the "Caring Dairy" program "respects the farmer and their farmworkers, the planet and the cow."[4]

31.     Unilever's Ben & Jerry's website, which the packaging ties to the "happy cow" assurances, describes the "Caring Dairy" program as follows:

> Caring Dairy provides our farmers a program for evaluating, implementing and
> continuously improving sustainable agricultural practices on their farms. Our belief
> is that the future of dairy farming is to build soil health that includes increased cover
> crops, alternative tilling practices, rotational crops and grazing techniques. We also
> believe that high quality animal care is fundamental to the success of a farm, a well-
> cared for cow will produce a higher quality milk. And of course the importance of
> labor that supports the entire farm, from the farmer to the farmworker.[5]

32.     According to Unilever's Ben & Jerry's website, supplier farms join the "Caring Dairy" program through verification by a third party that the farm meets certain standards. These standards are split into three categories that reflect the values that Unilever claims Ben & Jerry's believes in: Cow Care, Planet Stewardship, and Farmer & Farm Worker.[6]

33.     In addition to meeting the "basic standards for being a Caring Dairy farmer (required for all farmers)," farms that supply Unilever for the Ben & Jerry's Products, the website claims, can also be verified as "Silver Tier" or "Gold Tier" by meeting additional standards.[7]

---

[4] Unilever's Ben & Jerry's website, "Caring Dairy," https://www.benjerry.com/caringdairy (last visited Oct. 10, 2019).

[5] *Id.*

[6] Unilever's   Ben   &   Jerry's   website,   "Caring   Dairy   Standards," https://www.benjerry.com/whats-new/2016/caring-dairy-standards (last visited Oct. 10, 2019).

[7] *Id.*

34.     Taken together, Unilever's representations about the "Caring Dairy" program, which are offered to explain the "happy cows" of the Products' packaging, are intended to, and do, portray to consumers an image of animal husbandry that is more environmentally friendly and humane than regular factory-style, mass-production dairy operations.

35.     Contrary to the image created, and the representations made, by Unilever, the milk and cream used in the Products is produced in many different Vermont dairy facilities, only some of which are "Caring Dairy" verified. Many, if not most, of the facilities are, in fact, regular factory-style, mass-production dairy operations.

36.     The milk used in the Products is sourced through the St. Albans Cooperative Creamery, Inc. ("St. Albans"), a dairy cooperative based in St. Albans City, Vermont that has more than 360 members. In July 2019, the members of St. Albans voted to merge the cooperative with the massive Dairy Farmers of America, headquartered in Kansas City, Kansas, of which St. Albans was previously a member.

37.     As of January 2017, before the merger and within the class period, as defined below, fewer than 90 of St. Albans' 360 members—less than 25%—were verified "Caring Dairy" farms. At this time, Unilever was already representing to consumers that all the milk and cream in the Ben & Jerry's Products was sourced from "happy cows" on "Caring Dairy" farms.

38.     St. Albans is responsible for processing the raw milk produced both on the "Caring Dairy" farms and on St. Albans' non-"Caring Dairy" industrial facilities, by separating the raw milk into heavy cream and condensed skim milk. St. Albans delivers the separated heavy cream and condensed skim milk to Unilever for the Ben & Jerry's Products.[8]

_____

[8]     Ben & Jerry's Website, "How We Make Ice Cream," https://www.benjerry.com/flavors/how-we-make-ice-cream (last visited Oct. 10, 2019).

39.     St. Albans does not distinguish or keep milk produced at "Caring Dairy" farms separate from milk produced at St. Albans' other facilities, which include factory-style, mass-production dairy operations.

40.     Because St. Albans does not keep "Caring Dairy" milk separate from milk produced on non-"Caring Dairy" farms, a large percentage of the milk and cream used that Unilever uses in the Ben & Jerry's Products is *not* from verified "Caring Dairy" farms.

41.     Factory-style, mass-production dairy operations in Vermont employ intensive cow confinement practices and extensive antibiotic use, which does not comport with consumer perception of "happy cows" or the Caring Dairy assurances Unilever makes.

42.     For example, in 2018, a St. Albans member that did not participate in the Caring Dairy (but did supply Unilever for its Ben & Jerry's Products) program built an expansion in one of Vermont's most polluted watersheds without the proper permits or inspection, leading the farm to be one of Vermont's largest dairy operation plants.[9] In 2017, that dairy operation had been  fined for illegally discharging untreated agricultural waste into a brook that feeds into Lake Champlain.[10] In 2015, it was issued an FDA warning letter because it "offered for sale a [dairy cow] for slaughter as food that was adulterated" with "a new animal drug that is unsafe under section 512 of the FD&C Act, 21 U.S.C. 360b," and an investigation found that this member held "animals under conditions that are so inadequate that medicated animals bearing potentially harmful drug residues

---

[9] Mike Polhamus, *A Dairy Expands Near Polluted Lakes Putting Regulators to the Test*, VTDigger.org (Mar. 13, 2018), https://vtdigger.org/2018/03/13/a-dairy-expands-near-polluted-lakes-putting-regulators-to-the-test/.

[10] Office of the Attorney General of Vermont, *Attorney General TJ Donovan Settles Water Quality Claims with Berkshire Farm* (Dec. 20, 2017), http://ago.vermont.gov/blog/2017/12/20/attorney-general-tj-donovan-settles-water-quality-claims-berkshire-farm/.

are likely to enter the food supply."[11]

43.    Ben & Jerry's failure to disclose that only some of the milk and cream in the Products comes from the "happy cows" on "Caring Dairy" farms constitutes material omission. This material omission is in addition to the affirmative misrepresentations made by Ben & Jerry's.

## II.    Ben & Jerry's Has Deceived Consumers and Is Aware That Its Representations Are False.

44.    The Ben & Jerry's brand spent years cultivating a reputation as an environmentally and socially conscious brand, with its founders crediting the brand's success to its socially conscious practices.[12] Since acquiring Ben & Jerry's Homemade Inc., Unilever has been able to benefit from that reputation, and from the consumer trust it engenders, without necessarily operating the brand as Mr. Cohen and Mr. Greenfield would or did.

45.    Reasonable consumers rely on manufacturers, their reputation, and the information provided in manufacturers' marketing in making purchase decisions, especially in purchasing food.

46.    Reasonable consumers lack the information and scientific knowledge necessary to ascertain the true source, quality, and nature of the milk and cream Unilever sources for the Ben & Jerry's Products.

47.    Reasonable consumers must, and do, rely on Unilever to report honestly what the Products contain and how they are sourced.

48.    Reasonable consumers are misled and deceived by Unilever's "happy cow" and

---

[11] FDA, *Warning Letter to Pleasant Valley Farms of Berkshire, LLC* (Aug. 21, 2015), https://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2015/ucm459569.htm.

[12] Claire Rafford, *Ben & Jerry's founder reflects on company, socially conscious business mission*, The Observer (Mar. 21, 2018), https://ndsmcobserver.com/2018/03/ben-jerrys-founder-reflects/.

"Caring Dairy" representations into believing that they are purchasing ice cream produced using exclusively milk produced by "happy cows" on special "Caring Dairy" farms that meet verifiable standards and employ more humane animal-husbandry practices than those actually being used.

49.     Unilever made these false, misleading, and deceptive representations, and omitted the true information that would counter them, knowing that consumers would rely upon the representations and omissions in purchasing the Products.

50.     In making the false, misleading, and deceptive representations and omissions at issue, Unilever knew and intended for consumers to purchase the Ben & Jerry's Products when consumers might otherwise purchase a competing ice cream product.

51.     In making the false, misleading, and deceptive representations and omissions at issue, Unilever also knew and intended that consumers would pay more for products that were represented as humane and/or socially responsible, furthering Unilever's private interest of increasing sales of its Ben & Jerry's Products and decreasing the sales of products that are truthfully marketed by its competitors.

52.     Upon information and belief, Unilever has profited enormously to the detriment of consumers from its falsely marketed products and its carefully orchestrated image for the Ben & Jerry's brand.

53.     Unilever's conduct in representing the Products as being made exclusively with humane and socially responsible practices deceived and/or is likely to deceive the public.

54.     To this day, Unilever continues to conceal and suppress the true nature, identity, source, and method of production of the Ben & Jerry's Products.

55.     Unilever's concealment tolls the applicable statute of limitations.

56.     Upon information and belief, Unilever has failed to remedy the problems with the

Ben & Jerry's Products and their marketing, thus causing future harm to consumers, as well as real, immediate, and continuing harm.

57.     Plaintiff Ehlers and other members of the Class and Subclass will continue to suffer injury if Unilever's deceptive conduct is not enjoined. Plaintiff Ehlers would like to continue purchasing the Ben & Jerry's Products in the future. But as a result of Ben & Jerry's wrongful acts, Plaintiff Ehlers and other reasonable consumers can no longer rely on the truth and accuracy of Ben & Jerry's Products. Absent an injunctive order, Plaintiff Ehlers and other reasonable consumers are prevented from making a meaningful and informed choice, and are otherwise at continued risk of real and immediate threat of repeated injury, including purchasing deceptively labeled and packaged Products sold at prices above their true market value.

58.     Unilever has failed to provide adequate relief to members of the Class as of the date of filing this Complaint.

## JURISDICTION AND VENUE

59.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d), in that (1) this is a proposed class action involving more than 100 class members; (2) Plaintiff Ehlers is a resident of Vermont, while Defendant Conopco Inc., doing business as Unilever USA, is a New York corporation with its principal place of business in Englewood Cliffs, New Jersey; and (3) the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

60.     This Court has personal jurisdiction over the parties in this case. Defendant Ben & Jerry's Homemade, Inc. conducts business in Vermont and in this District. Defendant Conopco, Inc. d/b/a Unilever United States purposefully avails itself of the laws of this State to market, promote, distribute, and sell the Ben & Jerry's Products to consumers throughout Vermont and in

this District.

61.     Pursuant to 28 U.S.C. section 1391(a), venue is proper in this District because

substantial acts in furtherance of the alleged improper conduct, including the dissemination of false

and misleading information regarding the nature, quality, and/or ingredients of the Products,

occurred within this District; Plaintiff Ehlers purchased the Products in this District; and Plaintiff

Ehlers brings this action under the laws of Vermont.

## CLASS ALLEGATIONS

95.     Plaintiff Ehlers brings this action as a class action pursuant to Federal Rule of Civil

Procedure 23. Plaintiff seeks to represent the following Class and Sub-Class:

(1)     All consumers in the United States who purchased the Ben & Jerry's
        Products during the applicable limitations period, for their personal
        use, rather than for resale or distribution ("Class").

(2)     All consumers in Vermont who purchased the Ben & Jerry's
        Products during the applicable limitations, for their personal use,
        rather than for resale or distribution ("Vermont Sub-Class").

96.     Excluded from the Class and Vermont Sub-Class are (1) Ben & Jerry's Homemade

Inc., Conopco, Inc., any entity or division in which any Defendant has a controlling interest, and

Defendants' legal representatives, officers, directors, assigns, and successors; and (2) the judge to

whom this case is assigned and the judge's staff.

97.     The requirements of Federal Rule of Civil Procedure 23 are satisfied:

A.      Numerosity: The members of the Class and the Vermont Sub-Class are so

numerous that joinder of all members is impracticable. While the exact number of Class members

is currently unknown to Plaintiff Ehlers, based on Ben & Jerry's volume of sales, Plaintiff Ehlers

estimates that each numbers in the thousands, if not more.

B.      Commonality: There are questions of law and fact that are common to the

Class members and that predominate over individual questions, and therefore, the requirements of Rule 23(b)(3) are met. The common questions of law and fact include the following:

    i.    Whether Unilever materially misrepresented, either through express or implied representations, that the milk and cream in the Ben & Jerry's Products originated exclusively from "happy cows" on "Caring Dairy" farms;

    ii.    Whether Unilever misrepresented and/or failed to disclose material facts concerning the Ben & Jerry's Products;

    iii.    Whether Unilever's labeling, marketing, and sale of the Ben & Jerry's Products constitutes unfair, deceptive, fraudulent, or unlawful conduct;

    iv.    Whether Unilever warrantied the Ben & Jerry's Products to contain milk and cream originating exclusively from "happy cows" on "Caring Dairy" farms;

    v.    Whether Unilever procured and has retained ill-gotten gains from members of the Class;

    vi.    Whether Unilever's conduct injured consumers and, if so, the extent of the injury;

    vii.    Whether Plaintiff Ehlers and the Class or Vermont Sub-Class members are entitled to injunctive relief; and

    viii.    The appropriate remedies for Unilever's conduct.

    C.    Typicality: Plaintiff Ehlers's claims are typical of the claims of the Class and Vermont Sub-Class because Plaintiff Ehlers suffered the same injury—*i.e.*, Plaintiff Ehlers

purchased the Ben & Jerry's Products based on Unilever's misleading representations and omissions about the qualities of those Products.

D.     Adequacy: Plaintiff Ehlers will fairly and adequately represent and protect the interests of the members of the Class and the Vermont Sub-Class. Plaintiff Ehlers does not have any interests that are adverse to those of the Class members or Vermont Sub-Class members. Plaintiff Ehlers has retained competent counsel experienced in class action litigation and intends to prosecute this action vigorously.

E.     Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Since the damages suffered by individual Class members are relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged.

98.     The prerequisites for maintaining a class action for injunctive or equitable relief under Federal Rule of Civil Procedure 23(b)(2) are met because Unilever has acted or refused to act on grounds generally applicable to the Class and to the Vermont Sub-Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of the Vermont Consumer Protection Act
### (On Behalf of Plaintiff and the Vermont Subclass)

99.     Plaintiff Ehlers repeats the allegations in all the foregoing paragraphs as if fully set forth herein.

- 17 -

100.     Plaintiff Ehlers brings this claim on his own behalf and on behalf of the Vermont Subclass.

101.     The Vermont Consumer Protection Act (9 V.S.A. §§ 2453 *et seq.* ("CPA")) declares unlawful all "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." 9 V.S.A. § 2453(a). The CPA is to be liberally construed to protect the public and encourage fair and honest competition.

102.     Unilever has acted unfairly and deceptively, in violation of the CPA, by representing to consumers that the milk and cream in Ben & Jerry's Products is sourced exclusively from "happy cows" on "Caring Dairy" farms that meet specific and verifiable criteria. This representation was likely to mislead consumers acting reasonably under the circumstances, and did mislead consumers acting reasonably under the circumstances.

103.     Having made these representations, Unilever has acted unfairly and deceptively, in violation of the CPA, by omitting information about the percentage of milk and cream in Ben & Jerry's Products that originates from regular factory-style, mass-production dairy operations. This omission was likely to mislead consumers acting reasonably under the circumstances, and did mislead consumers acting reasonably under the circumstances.

104.     Unilever's representations and omissions were material to consumers. Unilever's representations and omissions led consumers to believe that Ben & Jerry's Homemade Inc. remained a socially conscious and responsible company sourcing milk and cream exclusively from "happy cows" on "Caring Dairy" farms. Unilever's representations and omissions led consumers to purchase Ben & Jerry's Products, to purchase more of those Products, and/or to pay a higher price for the Products than they otherwise would have.

105.     Although it is not necessary for Plaintiff Ehlers to prove that Unilever intended to

act unfairly or deceptively, on information and belief, Unilever did so intend, and did knowingly capitalize on the reputation of Ben & Jerry's Homemade Inc., established before that company's acquisition by Unilever, to make material representations and omissions to consumers in Vermont and across the nation.

106.    Unilever acted with malice, ill will, or wanton conduct in deceiving Vermont consumers about how their purchasing dollars are being spent, and whether they are supporting "happy cows" on "Caring Dairy" farms, or unwittingly spending in support of regular factory-style, mass-production dairy operations. Unilever acted with malice, ill will, or wanton conduct in deceiving Vermont consumers who wish to support a socially conscious Vermont-based business.

107.    Pursuant to 9 V.S.A. § 2461(b), a person who sustains injury or damages as a result of practices prohibited by § 2453 may sue for equitable relief and to recover damages or return of consideration. Plaintiff Ehlers sustained injury and damages when he saw Unilever's representations about the Ben & Jerry's Products and purchased the Products at the frequency and price he did.

108.    Plaintiff Ehlers brings this claim for violation of the CPA on his own behalf, and on behalf of other Vermont consumers who saw the Ben & Jerry's Product labels and purchased the Products. Plaintiff Ehlers is a "consumer" pursuant to 9 V.S.A. § 2451(a).

109.    Plaintiff Ehlers and members of the Vermont Subclass are entitled to:

a.   equitable relief;

b.   actual damages, or in the alternative, return of consideration;

c.   exemplary damages not exceeding three times the value given; and

d.   reasonable attorneys' fees.

9 V.S.A. § 2461(b).

## COUNT II
### Breach of Express Warranty
### (On Behalf of Plaintiff and the Class)

110.    Plaintiff Ehlers repeats the allegations in all the foregoing paragraphs as if fully set forth herein.

111.    Plaintiff Ehlers brings this claim on his own behalf and on behalf of the Class.

112.    Defendants provided Plaintiff Ehlers and members of the Class with written express warranties including, but not limited to, warranties that the milk and cream in the Ben & Jerry's Products originated exclusively from "happy cows" on "Caring Dairy" farms that med verifiable criteria.

113.    Plaintiff Ehlers and members of the Class purchased Ben & Jerry's Products believing them to conform to the express warranties.

114.    Defendants breached these warranties.

115.    As a proximate result of the breach of warranties by Defendants, Plaintiff Ehlers and the members of the Class did not receive goods as warranted and did not receive the benefit of the bargain. They have been injured and have suffered damages in an amount to be proven at trial.

## COUNT III
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

116.    Plaintiff Ehlers repeats the allegations in all the foregoing paragraphs as if fully set forth herein.

117.    Plaintiff Ehlers brings this claim on his own behalf and on behalf of the Class.

118.    To the extent required by law, this cause of action is pleaded in the alternative to Plaintiff Ehlers's contract-based claims.

119.     As the intended, direct, and proximate result of Defendants' conduct, Defendants have been unjustly enriched through sales of Ben & Jerry's Products at the expense of Plaintiff Ehlers and the Class members.

120.     Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiff Ehlers and the Class members, in light of the fact that the Ben & Jerry's Products they purchased were not what Unilever purported them to be.

## PRAYER FOR RELIEF

Plaintiff Ehlers, on his own behalf and on behalf of the Class and the Vermont Subclass, prays for the following relief:

A.     An order certifying the Class and Vermont Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Ehlers as Class and Vermont Subclass Representative and his attorneys as Class Counsel;

B.     A declaration that Defendants are financially responsible for notifying Class and Vermont Subclass members of the pendency of this suit;

C.     An order declaring that Unilever's conduct violates the Vermont CPA;

D.     An order providing appropriate equitable relief in the form of an injunction against Defendants' unlawful and deceptive acts and practices, and requiring proper, complete, and accurate representation, packaging, and labeling of the Ben & Jerry's Products;

E.     An order providing appropriate equitable relief in the form of an injunction against Defendants' unlawful and deceptive acts and practices, and requiring that Defendants remove and refrain from making representations on the Ben & Jerry's Products' packaging or elsewhere that the milk and cream in the Products originates from "happy cows" on "Caring Dairy" farms;

F.      Actual damages for members of the Vermont Subclass pursuant to, or in the alternative, return of the consideration given by members of the Vermont Subclass to Unilever, pursuant to 9 V.S.A. § 2461(b);

G.      Exemplary damages for members of the Vermont Subclass pursuant to 9 V.S.A. § 2461(b), not to exceed three times value given;

H.      Restitution for members of the Class to recover Unilever's ill-gotten benefits;

I.      Damages for members of the Class arising from Unilever's breach of warranty;

J.      An order finding in favor of Plaintiff Ehlers and the Class and Vermont Subclass on all counts asserted herein;

K.      Prejudgment interest on all amounts awarded;

L.      An order of restitution and all other forms of equitable monetary relief;

M.      Injunctive relief as the Court may deem appropriate; and

N.      An order awarding Plaintiff Ehlers and the Class and Vermont Subclass their reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff Ehlers hereby demands a trial by jury.


Dated: October 29, 2019                    Respectfully submitted,


                                           BY: _____
                                           Joshua L. Simonds, Esq.
                                           The Burlington Law Practice, PLLC
                                           2 Church St., Ste G
                                           802-651-5370
                                           802-651-5374 (fax)
                                           jls@burlingtonlawpractice.com

RICHMAN LAW GROUP
Kim E. Richman (pro hac vice forthcoming)
8 W. 126th Street
New York, NY 10027
718.705.4579
718.228.8522 (fax)
krichman@richmanlawgroup.com


*Attorneys for Plaintiff Ehlers and the Proposed*
*Class and Vermont Subclass*