UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| JAMES EHLERS, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:19-cv-194-cr |
| BEN & JERRY'S HOMEMADE INC., and CONOPCO, INC., d/b/a UNILEVER UNITED STATES, | ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS BEN & JERRY'S HOMEMADE, INC.'S AND CONOPCO, INC.'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6) AND INCORPORATED MEMORANDUM OF LAW

Defendants Ben & Jerry's Homemade, Inc. and Conopco, Inc. d/b/a "Unilever" (collectively, "Ben & Jerry's"), by and through counsel, hereby move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. In support, Ben & Jerry's submits the following memorandum of law and supporting declaration.

How happy is a cow?

What should be the first line of a riddle is now the major premise of a lawsuit. According to James Ehlers, he bought Ben & Jerry's ice cream because he believed it was made from dairy products that came "exclusively" from "happy cows." He cites, among other "representations," label depictions of "green fields, blue skies, and cartoon depictions of happy animals," including a cartoon cow that is quoted on the back of the carton. That cow (which has no discernible expression at all) does say that Ben & Jerry's uses, among other ingredients, "milk & cream from happy cows," but doesn't use the word "exclusively." Ehlers points out, however, that the cow directed him to Ben & Jerry's website if he wanted to learn more about the company's sources,

and he alleges that the website then led him to believe that *all* the dairy Ben & Jerry's uses is exclusively "sourced from 'happy cows'" on special farms.

But the website also does not make this claim. It contains dozens of links that provide information on Ben & Jerry's social and environmental programs, including its "Caring Dairy" program, which is designed to encourage dairies to use more humane practices by offering premiums to dairies that qualify. But the website explains that this program is voluntary and identifies the number of participating farms. It also explains the program's impact by pointing out that the dairy output of the farms enrolled in it is now equal to Ben & Jerry's total dairy requirements, which is very different from a promise that every ounce of dairy in every pint necessarily came from a Caring Dairy. In other words, to the extent a reasonable consumer bought Ben & Jerry's ice cream because he wanted to support the humane treatment of cows, he got exactly what he paid for. Ehlers' complaint should be dismissed for four reasons.

*First*, the statement that Ben & Jerry's uses milk & cream "from happy cows" does not mislead consumers. As an initial matter, "happy cows" is non-actionable puffery because it is a statement of opinion, not a statement of fact. Happiness cannot be measured objectively, and Ehlers could not take a cow's deposition to ask how it feels. (Rule 30 applies only to "persons.") To the extent he is alleging (by incorporating the website) that "from happy cows" means "exclusively from farms enrolled in the Caring Dairy program," no reasonable consumer could interpret the website to be saying this. Moreover, the carton label does not refer to the Caring Dairy program, nor does the web address on back of the carton even link to the pages of the website relating to the Caring Dairy program.

*Second*, Ehlers has not plausibly alleged why the challenged statements about the program would be material to reasonable consumers—even assuming the truth of the unsupported

allegation that consumers are "socially and environmentally conscious" and focused on humane cow treatment—when the Caring Dairy program does in fact encourage humane treatment whether or not all of the dairy in the ice cream comes from Caring Dairy farms.

*Third*, the warranty and unjust-enrichment claims fail for similar reasons.

*Finally*, Ehlers lacks standing to seek injunctive relief because he has not alleged facts supporting an immediate threat of future injury. He now knows that not all the dairy in Ben & Jerry's products comes from Caring Dairy farms, and in any event, the phrase "happy cows" has already been removed from the packaging. The cartoon cows remain, but as noted above, they did not look happy to begin with.

## SUMMARY OF PLAINTIFF'S ALLEGATIONS

Plaintiff James Ehlers alleges that Ben & Jerry's misleads consumers into believing that Ben & Jerry's ice cream products are "made with milk and cream sourced exclusively from 'happy cows' on Vermont dairies that participate in a special, humane 'Caring Dairy' program," when most of the milk and cream actually comes from "factory-style, mass-production dairy operations." (Compl. ¶¶ 7-8.) Plaintiff alleges that consumers who buy Ben & Jerry's ice cream are "socially and environmentally conscious" and "seek products that provide assurances regarding animal welfare …."[1] (*Id*. ¶¶ 4, 21.) According to the complaint, Ben & Jerry's alleged misrepresentations regarding its dairy sourcing "prompt consumers to buy more Ben & Jerry's Products,[2] and to pay

---

[1] Plaintiff does not plead any facts showing that Ben & Jerry's consumers nationwide hold these views. Many consumers buy the ice cream simply because they like the taste and the flavors, not because of the company's position on social and environmental issues.

[2] The allegation that the challenged statements prompt *additional* purchases suggests that Plaintiff and the putative class members were already buying Ben & Jerry's ice cream for reasons other than representations regarding animal welfare. Indeed, Plaintiff states elsewhere in the complaint that he is a "long-time purchaser of Ben & Jerry's Products." (Compl. ¶ 14.) Plaintiff does not identify which of his purchases were in reliance on the challenged representations, or how the Court could determine which putative class members relied on them, absent individual inquiries.

more for them than they otherwise would." (*Id*. ¶ 10.) Plaintiff alleges that he purchased eight varieties of Ben & Jerry's ice cream from his local Shaw's supermarket in Colchester, Vermont. (*Id*. ¶¶ 14-15.) These varieties include Phish Food, One Love, Americone Dream, Tonight Dough, Chocolate Chip Cookie Dough, Mint Chocolate Cookie, S'Mores, and New York Super Fudge Chunk ("the Products"). (*Id*. ¶ 14.)

Plaintiff claims he purchased the Products "in reliance on the label representations and the website to which the label directed him." (*Id*. ¶ 16.) He does not state when he bought the Products, or when he reviewed the label and website. The back of the carton includes a cartoon cow making the statement "We source **Non-GMO ingredients**, **Fairtrade** cocoa & sugar, eggs from **cage-free hens** & milk & cream from **happy cows**. Learn more at benjerry.com." (*Id*. ¶ 25.) The carton does not explain the meaning of "happy cows" and does not reference the "Caring Dairy" program. At some point, Plaintiff purportedly visited www.benjerry.com and read about "happy cows" and "Caring Dairy" farms, and watched a video about the "Caring Dairy" farms. (*Id*. ¶ 16.) Plaintiff alleges that he understood these representations collectively to mean that the Products were made with milk and cream that came *exclusively* from "happy cows" on "Caring Dairy" farms. (*Id*.) Plaintiff apparently reached this conclusion based on one statement on a webpage (actually, one phrase that is part of a heading on that page) that describes the standards for the Caring Dairy program: "Basic standards for being a Caring Dairy farmer (required for all farmers)." (*Id*. ¶ 29.) Plaintiff appears to be alleging that he interpreted "all farmers" to mean "all farmers that supply dairy to Ben & Jerry's," rather than all farmers participating in the Caring Dairy program. (*Id*.)[3]

---

[3] Plaintiff also alleges that "signage" and "take-away cups" in Ben & Jerry's retail locations "present the Products as made with milk produced by 'happy cows,' featuring, among other representations, green fields, blue skies, and cartoon depictions of happy animals." (Compl. ¶ 25.) Plaintiff does not identify any statement on a sign or cup that makes representations regarding the source of the dairy, nor does he allege how reasonable consumers would infer anything about the source of the dairy merely from a cartoon depicting "happy animals" (who, as noted, have no facial

Plaintiff purports to bring claims for violation of the Vermont Consumer Protection Act ("VCPA"), breach of express warranty, and unjust enrichment, and requests actual and exemplary damages, restitution, injunctive relief, and attorney's fees, among other things. (*Id.* ¶¶ 99-120, Prayer for Relief.) He seeks to represent classes of consumers who purchased the Products during the limitations period nationwide and in Vermont. (*Id.* ¶ 95.)

## **BACKGROUND**

Ben & Jerry's is a Vermont-based company that manufactures and markets premium ice cream, frozen yogurt, ice cream novelties, and sorbet. Its products are distributed globally in supermarkets, grocery stores, convenience stores, Scoop Shops, restaurants, and other venues. Ben & Jerry's is known by many consumers for its progressive values. The company believes that business has a responsibility and a unique opportunity to be a powerful lever of change in the world, and that it can bring traditional and contemporary business tools to drive systemic progressive social change by advancing the strategies of the larger movements that deal with those issues, such as climate justice and social equity.

Along with its commitment to social and economic justice globally, Ben & Jerry's has been a leader in developing and supporting environmentally-friendly business practices. The company believes the future of dairy farming is to build soil health that includes increased cover crops, alternative tilling practices, rotational crops, and grazing techniques. It also believes that high quality animal care is fundamental to the success of a farm, as is a valued labor force. With these ideals in mind, in 2003, Ben & Jerry's launched "Caring Dairy," a collaborative project working directly with dairy farmers in the Netherlands. *See 2008 Social and Environmental Assessment Report*, https://www.benjerry.com/about-us/sear-reports/2008-sear-report (noting that

---

expressions). Plaintiff also does not state that he personally viewed any signage or cups in a Ben & Jerry's retail location or that they influenced his decision to purchase the ice cream.

the Caring Dairy program was in its sixth year).[4] In 2009 and 2010, the company expanded the

Caring Dairy program to Vermont to include the St. Albans Cooperative Creamery, the primary

supplier of the milk and cream for Ben & Jerry's ice cream sold in North America. *See 2009 Social

and Environmental Assessment Report*, https://www.benjerry.com/about-us/sear-reports/2009-

sear-report; *2010 Social and Environmental Assessment Report*, https://www.benjerry.com/about-

us/sear-reports/2010-sear-report.

The Caring Dairy program sets basic standards for animal welfare, stewarding the

environment, and farm labor. Participation in the program is voluntary and those farms that meet

the standards qualify for financial incentives. All participating farms must undergo a periodic

third-party verification by Where Food Comes From, a leading independent third-party food

verification organization, to ensure they are meeting the required standards. *See Caring Dairy

Standards*, https://www.benjerry.com/whats-new/2016/caring-dairy-standards. In recent years,

Ben & Jerry's has expanded the program by offering two additional tiers with higher standards

---

[4] This brief contains several citations to Ben & Jerry's website. The Court may consider information on the website because the website (www.benjerry.com) is both incorporated into the complaint by reference and integral to the complaint. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (on a 12(b)(6) motion, "courts must consider the complaint in its entirety, as well as … documents incorporated into the complaint by reference …."); *Nicosia v. Amazon.com*, 834 F.3d 220, 230 (2d Cir. 2016) (courts may consider a document on a motion to dismiss when "the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint") (internal quotation marks and citations omitted). Plaintiff's claims are based largely on statements contained on Ben & Jerry's website; the complaint refers to the website at least 17 times and includes a screenshot from the website. *See* Compl. ¶¶ 16, 23, 26, 27 & n.2, 28 n.3, 29, 30 & n.4, 31, 32 & n.6, 33, 38 n.8. The Second Circuit and other courts have considered the content of websites on motions to dismiss. *See, e.g.*, *Derbaremdiker v. Applebee's Int'l, Inc.*, 519 F. App'x 77, 78 (2d Cir. 2013) (considering sweepstakes rules on website referenced on receipt because the complaint referred to the rules and the district court deemed them to be incorporated into the complaint); *Knievel v. ESPN, Inc.*, 223 F. Supp. 2d 1173, 1176 (D. Mont. 2002) (taking into consideration the contents of the website "at the center of Plaintiffs' allegations" when the website was "mentioned in the complaint and copies of some of the pictures are attached to the complaint"), *aff'd*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("The rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material."); *Porras v. StubHub, Inc.*, 2012 WL 3835073, at \*5 n.3 (N.D. Cal. Sept. 4, 2012) (considering website screenshots attached to motion to dismiss when plaintiff alleged in her complaint numerous statements made by defendant on its website).

and compensation (Silver and Gold) for interested farmers. *Id*. Caring Dairy farmers attend workshops and report farm performance data on their social, environmental, and economic impact, which Ben & Jerry's gathers from the online self-assessment each participating farmer must complete. *See 2017 Social and Environmental Assessment Report*, https://www.benjerry.com/about-us/sear-reports/2017-sear-report. In 2018, 72 of the approximately 360 family farmers in the St. Albans Co-op were enrolled in Caring Dairy. That year, Ben & Jerry's paid nearly $3.6 million in direct premiums to farmers in the Caring Dairy program. *See 2018 Social and Environmental Assessment Report*, https://www.benjerry.com/about-us/sear-reports/2018-sear-report.

As explained on its website, Ben & Jerry's has used the Caring Dairy program to drive improvements in the dairy industry through an approach called "mass balancing." Since 2012, the St. Albans Co-op Caring Dairy farmers have supplied a volume of milk equivalent to what Ben & Jerry's uses to produce all products sold in North America, and the St. Albans Co-op and European Caring Dairy farmers together have produced a volume of milk equivalent to Ben & Jerry's requirements worldwide. *See 2012 Social and Environmental Assessment Report*, https://www.benjerry.com/about-us/sear-reports/2012-sear-report. Thus, Ben & Jerry's accounts for its dairy "footprint" with Caring Dairy farms. Due to logistical and other constraints, Ben & Jerry's is unable to ensure that all the dairy in any particular pint of its ice cream comes from cows at a Caring Dairy farm. But mass balancing ensures that Ben & Jerry's is able to have the same overall impact on dairy farming practices.

Contrary to Plaintiff's allegations, the preceding information about the Caring Dairy program is available on benjerry.com. As noted, Plaintiff's claims are based principally on a single statement on one page of the website: "Basic standards for being a Caring Dairy farmer (*required*

7

*for all farmers*).” (Compl. ¶ 29) (emphasis added). Plaintiff alleges he interpreted the parenthetical phrase to mean that all farmers providing milk and cream to Ben & Jerry’s are part of the Caring Dairy program. But the rest of that webpage and other statements on the website (such as those above and others discussed below) would have cleared up Plaintiff’s misconception. *See, e.g.*, *Our Caring Dairy Program Is Working Toward a Sustainable Future for Dairy*, https://www.benjerry.com/whats-new/2018/04/toward-sustainable-dairy (stating that “*participating* farms must meet the basic standards of the [Caring Dairy] program”) (emphasis added).[5] That same page further explains that farms join the Caring Dairy program “voluntarily” and for their efforts, “receive an additional premium on top of their regular milk price”—which necessarily means there are farms Ben & Jerry’s works with that don’t receive the “premium” because they don’t participate. *Id*. As more fully explained below, the website informs consumers how the “Caring Dairy” program works. Notwithstanding that the website fully discloses the information Plaintiff alleges was concealed, Ben & Jerry’s revised the website statement cited in paragraph 29 of the complaint in early 2019 to clarify that basic standards are “required for all farmers *who participate in the program.*” *Caring Dairy Standards*, https://www.benjerry.com/whats-new/2016/caring-dairy-standards (emphasis added).[6]

## STANDARD OF REVIEW

A court should dismiss a complaint if it fails to set forth “enough facts to state a claim to relief that is plausible on its face.” *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft*

---

[5] Portions of this webpage (but not those cited in this motion) have been modified since it was initially posted in early 2018.

[6] This lawsuit typifies the old adage “no good deed goes unpunished.” It is Ben & Jerry’s obligatory punishment in today’s legal culture for attempting to do something environmentally good and responsible and not immediately achieving perfection. It proves that if you cannot instantly transform all dairy farms into fully-compliant “Caring Dairies,” it is better not to try at all.

*v. Iqbal*, 556 U.S. 662, 697 (2009). The pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Nor is it enough to allege facts "merely consistent with" liability. *Id*. A complaint "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The "[f]actual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. Mere legal conclusions are not "facts" for Rule 8 purposes. *Id.*; *Iqbal*, 556 U.S. at 678-79. "Plausibility … depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). Unless the complaint pleads sufficient facts to cross the line "from conceivable to plausible," it must be dismissed. *Twombly*, 550 U.S. at 570.

## ARGUMENT

## I.      Plaintiff fails to state a claim under the VCPA.

The VCPA requires Plaintiff to allege that he "contract[ed] for goods … in reliance upon … or … sustain[ed] damages or injury as a result of … false or fraudulent representations or practices prohibited by section 2453 …." *Glassford v. DuFresne & Assocs., P.C.*, 124 A.3d 822, 832-33 (Vt. 2015) (citing Vt. Stat. Ann. tit. 9, § 2461(b)). A deceptive act or practice is "(1) a representation, practice, or omission likely to mislead; (2) that the consumer interprets reasonably under the circumstances; and (3) with 'material' misleading effects, i.e., likely to affect consumers' conduct or decision with regard to a product." *Otis-Wisher v. Fletcher Allen Health Care, Inc.*, 951 F. Supp. 2d 592, 603 (D. Vt. 2013) (citation omitted). "Misrepresentations involving facts are

actionable while those involving opinions are not." *Id*.; *see Heath v. Palmer*, 915 A.2d 1290, 1296 (Vt. 2006). Under the VCPA's objective standard, an alleged misrepresentation must be "likely to mislead a reasonable consumer." *Lofts Essex, LLC v. Strategis Floor and Décor Inc.*, 2019 VT 82, ¶ 32, --- A.3d ----; *Lang McLaughry Spera Real Estate, LLC v. Hinsdale*, 2011 VT 29, ¶ 34, 35 A.3d 100, 111 ("[T]he standards for consumer fraud are objective to be judged from the standard of a reasonable consumer.").

Plaintiff's claim fails partly because the phrase "happy cows" is subjective opinion and thus non-actionable. In addition, Plaintiff has not plausibly shown that the phrase "happy cows" and statements on Ben & Jerry's website regarding the "Caring Dairy" program are likely to mislead reasonable consumers, that reasonable consumers would interpret the statements as Plaintiff did, or that the statements are material to reasonable consumers' purchase decisions.

### A.  The cartoon cow's quote about "happy cows" on the back of the carton is non-actionable opinion.

The phrase "happy cows" on the back of the carton is not actionable because it is a statement of opinion, not a statement of fact. The back panel of the carton contains a cartoon cow with a callout above the cow indicating that the cow is saying: "We source … milk & cream from happy cows." (Compl. ¶ 25.) The happiness of the cows is not an "objectively verifiable" statement of fact and therefore is not actionable under the VCPA. *Heath*, 915 A.2d at 1296. Whether a cow is "happy" is a classic example of subjective opinion or puffery that is "incapable of being substantiated or refuted." *Id.* (citation and internal quotation marks omitted); *see Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019) ("the statement that Diet Coke will 'not go to your waist' is so vague and non-specific a representation that, at most, it amounts to inactionable 'puffery'"); *In re Scotts EZ Seed Litig.*, 2013 WL 2303727, at *7 (S.D.N.Y. May 22, 2013) ("[D]efendants' representations that EZ Seed is 'WaterSmart'; 'Drought tolerant'; 'Grows

Anywhere! Guaranteed!'; Makes the Most Of Every Drop'; and 'Grows in Tough Conditions! Guaranteed!' are non-actionable puffery. … [T]hese statements are generalized or vague, and thus 'should not have been relied upon as an inducement to purchase' EZ Seed") (citations omitted). Because a cow's happiness cannot be verified, the statement on the back of the carton does not constitute a violation of the VCPA.[7]

**B.**   **Plaintiff has not plausibly shown that the phrase "happy cows" is likely to mislead or that reasonable consumers would interpret the phrase the same way as Plaintiff.**

**1.**   **The carton label is not misleading.**

Plaintiff has not plausibly alleged facts demonstrating that reasonable consumers are likely to be misled by the phrase "happy cows" or that they would interpret the phrase in the same manner as Plaintiff. Initially, the phrase "happy cows" is not misleading for the same reason it is not actionable: it is a statement of opinion, not a statement of fact capable of verification through objective means. *See Heath*, 915 A.2d at 1296. Moreover, the statement on the back of the carton, "We source … milk & cream from happy cows," is not misleading in context because it is part of a more general statement about ingredients and because the statement explicitly invites consumers to "Learn more at benjerry.com." (Compl. ¶ 25.) A reasonable consumer would understand, therefore, that there is more to learn about the ingredient sources and this information could be found on the website. The complaint does not disclose this important fact until paragraph 25, where the actual carton label is pictured. Only then is it evident that the connection Plaintiff draws between "happy cows" and "Caring Dairy" farms in the preceding paragraphs of the complaint is

---

[7] Unlike most food labeling cases, where the plaintiff is challenging representations prominently appearing on the front of the package, the statement at issue here appears in smaller type on the *back* of the product, which, as has been shown with other products, only a small number of consumers read. *See, e.g.*, *In re Clorox Consumer Litig.*, 301 F.R.D. 436, 444 (N.D. Cal. 2014) (citing evidence that "only 11 percent of consumers read the back panel of cat litter packaging").

based solely on information found on the website. In short, Plaintiff does not plausibly allege that the packaging, *by itself*, is misleading. Plaintiff's claims therefore depend on whether he has pleaded facts plausibly showing that reasonable consumers would be misled by Ben & Jerry's website (which assumes they visited the website before buying).

### 2. The Ben & Jerry's website is not misleading.

Assuming that reasonable consumers would even go to the website while standing in the grocery store before choosing their ice cream, Plaintiff must plead facts to show that the inference he has drawn about the sourcing of milk and cream from "happy cows" is the inference reasonable consumers would draw if they read the back of the carton and visited the website before making their purchase decision. The complaint does not plead sufficient facts to support that conclusion and, accordingly, does not plausibly plead that reasonable consumers would be misled.

Plaintiff alleges that "[u]ntil recently, and during the class period, Unilever's Ben & Jerry's website—the address of which is displayed to explain the 'happy cows' representation—told consumers that the 'Caring Dairy' program is 'required of all farmers.'" (Compl. ¶ 29.) The webpage Plaintiff cites does not say that, but there are other problems with Plaintiff's reliance on that webpage. As an initial matter, the webpage address on the back of the carton is for the website generally (benjerry.com), not the specific webpage pictured in paragraph 29. The statement "Learn more at benjerry.com" on the back of the carton invites consumers to explore the website generally to see how Ben & Jerry's makes its ice cream; it does not relate only to the sourcing of milk and cream from "happy cows."

Moreover, the web address on the carton takes the consumer to the website's homepage. The screenshot in paragraph 29, on which Plaintiff's claims principally rely, is not the homepage, nor is it even a direct link from the homepage. Plaintiff does not allege how he got to this webpage,

nor does he plead facts suggesting that a substantial number of consumers who visited Ben & Jerry's homepage would have ended up on this same webpage, but not others. Plaintiff does not allege how he connected "happy cows" to the Caring Dairy program in the first place—or why other consumers, assuming they made the same connection upon exploring the website, would not also have seen other pages on the website that provide additional information about the Caring Dairy program. In short, Plaintiff has not alleged how his idiosyncratic "surfing" of the website would mirror that of other consumers.

The complaint selectively references certain pages from the website to erroneously assert that Ben & Jerry's misleads consumers to believe that *all* the milk and cream in its ice cream comes from Caring Dairy farms.[8] The website does not send that message. For example, one of the webpages expressly states that farms join the Caring Dairy program "voluntarily" and that "participating farms" must meet the program's requirements. *See, e.g.*, *Our Caring Dairy Program Is Working Toward a Sustainable Future for Dairy*, https://www.benjerry.com/whats-new/2018/04/toward-sustainable-dairy. Reasonable consumers reading this webpage would understand that not all supplying farms are in the program. *See Porras v. StubHub, Inc.*, 2012 WL 3835073, at *4-7 (N.D. Cal. Sept. 4, 2012) (granting motion to dismiss when website content revealed erroneous premise of plaintiff's misrepresentation claims); *In re 100% Grated Parmesan Cheese Mktg. and Sales Practices Litig.*, 275 F. Supp. 3d 910, 921-23 (N.D. Ill. 2017) (dismissing claims at the pleading stage when consumers could determine the meaning of the vague phrase "100% Grated Parmesan Cheese" from reading other information available to them on the label).

In addition, one of the direct links from the homepage is to the company's "SEAR Reports." "SEAR" stands for Social and Environmental Assessment Report, which is Ben &

---

[8] *See* Compl. ¶¶ 27 & n.2, 29, 30 & n.4, 32 & n.6.

Jerry's annual report to consumers on the company's social and environmental performance. These webpages contain exactly the type of information "socially and environmentally conscious" consumers would be interested in and dispel any misunderstanding that all of the farms that supply Ben & Jerry's are part of the Caring Dairy program:

- "In 2011, we had 71 farmers enrolled in Caring Dairy from the St. Albans Cooperative Creamery, our primary supplier of dairy ingredients in the U.S. These 71 farmers produced a volume of milk equivalent to 92% of Ben & Jerry's needs in 2011, and we'll sign on more farmers in 2012 until we reach 100%." (2011 SEAR Report, https://www.benjerry.com/about-us/sear-reports/2011-sear-report);

- "In 2011, Ben & Jerry's had 71 farmers from the St. Albans Cooperative Creamery enrolled in our Caring Dairy program. These 71 farmers produce a volume of milk equivalent to about 92% of Ben & Jerry's needs in North America. Our goal is to sign on more farmers in 2012 until we reach 100% of our total dairy volume used in North America." (2011 SEAR Report, https://www.benjerry.com/about-us/sear-reports/2011-sear-report);

- "For over two decades, we've been buying milk for our Vermont production from the St. Albans Cooperative in Vermont, made up of about 450 family farmers." (2011 SEAR Report, https://www.benjerry.com/about-us/sear-reports/2011-sear-report);

- "In 2013, the U.S. Caring Dairy™ program included 83 farms. These farms alone supply more than enough of the equivalent dairy volume for all of the Ben & Jerry's production in the North America. … Caring Dairy™ farmers in Vermont and the Netherlands produce more than enough of the equivalent global dairy volume that we need to make our ice cream around the world!" (2013 SEAR Report, https://www.benjerry.com/about-us/sear-reports/2013-sear-report);

- "In 2014, the US Caring Dairy™ program included 85 farms, adding 5 new farms … From a volume perspective, Caring Dairy™ covers our global production needs but our intention is to have all dairy suppliers that Ben & Jerry's sources from operating under the Caring Dairy™ program in the not-too-distant future. However, under a mass-balancing approach, Caring Dairy™ farms produce the dairy volume Ben & Jerry's needs for global production." (2014 SEAR Report, https://www.benjerry.com/about-us/sear-reports/2014-sear-report);

- "While the total number of farms participating each year changes, there were 65 continuously participating farmers who completed the Metrics section of the assessment for all three years of Caring Dairy 2.0, from 2016

to 2018 ….” (2018 SEAR Report, https://www.benjerry.com/about-us/sear-reports/2018-sear-report).

Plaintiff has not plausibly alleged why a substantial number of “socially and environmentally conscious”[9] consumers (Compl. ¶ 4)—even if they did visit Ben & Jerry’s website before purchasing ice cream—would view the specific webpage he identifies in paragraph 29 of the complaint, but not any of these other pages on the same website. Consumers who are as interested in environmental and animal husbandry issues as Plaintiff alleges Ben & Jerry’s consumers are—so much so that they purportedly would review the website before making an ice cream purchase—would be expected to thoroughly educate themselves on how Ben & Jerry’s does business.

Plaintiff’s reliance on one phrase on a single page of the website is unreasonable in light of the other information available to him on the website. An allegedly deceptive statement must be looked upon in light of the totality of the information made available to the plaintiff. *See Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 939 (7th Cir. 2001) (affirming dismissal of consumer fraud claim when the product’s packaging together with information on the defendant’s website “dispel[led] any tendency to deceive that the statements at issue might otherwise have had”).

Moreover, consumers reading the webpage referenced in paragraph 29 would not be misled; Plaintiff has taken the phrase “required of all farmers” out of context. The webpage does not state that all farms supplying milk and cream to Ben & Jerry’s are in the Caring Dairy program. Rather, the page discusses the standards for the Caring Dairy program, including the various tiers of the program and the requirements farmers have to meet to obtain the compensation available at

---

[9] Plaintiff assumes that consumers who purchase Ben & Jerry’s ice cream are “socially and environmentally conscious.” (Compl. ¶ 4.) He pleads no support for this conclusory allegation and thus the Court need not accept it as true for purposes of this motion to dismiss.

each tier. (*See* Declaration of Walter E. Judge, Jr. ("Judge Decl."), Ex. A.) The phrase "required of all farmers"—as the screenshot in paragraph 29 shows—indicates that the "Basic standards" are "required of all farmers" *in the program*. The remainder of the webpage, which is omitted from the complaint, identifies the additional standards for the Silver and Gold tiers, which pertain to all farmers "who aspire to these standards …." Judge Decl., Ex. A. Thus, the phrase "required of all farmers" is making a distinction between the farmers in the basic program and those in the Silver and Gold tiers. The bottom of the webpage displays a chart showing that, as of 2016 when this webpage was initially posted, there were 85 "participating farms" in the program. *Id.* Reading the webpage in its entirety, reasonable consumers would not be misled as to the nature of the Caring Dairy program. *See Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ("[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial. … [T]he presence of a disclaimer or similar clarifying language may defeat a claim of deception."); *Geffner*, 928 F.3d at 200 (citing same); *Davis v. Hain Celestial Group, Inc.*, 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018) (The "entire mosaic [must be] viewed rather than each tile separately." (citations omitted)).[10]

In sum, because the carton label refers consumers to the website generally, rather than a specific page, the label and website are not misleading to reasonable consumers. By stating "Learn more at benjerry.com" on the back of the carton, the company was inviting consumers to explore its website. The information on that website provides a full understanding of dairy sourcing and the Caring Dairy program.

---

[10] The information on Ben & Jerry's website, which includes the clarification to this page acknowledged in paragraph 29 of the complaint, shows that Plaintiff's allegation in paragraph 54 that "[t]o this day, Unilever continues to conceal and suppress the true nature, identity, source, and method of production of the Ben & Jerry's Products" is false.

**C.**     **Plaintiff has not plausibly pleaded that the alleged misrepresentations are material to reasonable consumers, given that the website shows the Caring Dairy program does encourage more humane treatment.**

An alleged misrepresentation must not only be misleading to reasonable consumers, it must be material as well, i.e., likely to have an effect on their purchasing decisions. *Otis-Wisher*, 951 F. Supp. 2d at 603. Even if the Court accepts for purposes of this motion Plaintiff's unsupported assertions that consumers are "socially and environmentally conscious" and "willing to pay more for products" that "provide assurances regarding animal welfare" (Compl. ¶¶ 4, 21), and Plaintiff's allegation that Ben & Jerry's representations "portray to consumers an image of animal husbandry that is more environmentally friendly and humane than regular factory-style, mass-production dairy operations" (*id*. ¶ 34), Plaintiff has not plausibly alleged that the fact that not all of the milk and cream in Ben & Jerry's ice cream comes from Caring Dairy farms would be material to reasonable consumers.

Plaintiff has not pleaded any facts to suggest that consumers concerned about the humane treatment of dairy cows would find it significant that not all of the milk and cream in Ben & Jerry's ice cream comes from Caring Dairy farms, when the milk output from all of the Caring Dairy farms equals the output needed to supply Ben & Jerry's demand. Although the company cannot ensure that all the dairy in each pint of ice cream is from a Caring Dairy farm, through mass balancing it is able to have the same overall impact on dairy farming practices. In short, Ben & Jerry's fully accounts for its dairy "footprint" with the Caring Dairy program. Plaintiff has not plausibly alleged that reasonable consumers concerned about the treatment of cows would be likely to alter their purchasing behavior based on the challenged representations when the Caring Dairy program provides improved care for the *same number of cows* it would if the program supplied all the milk and cream for Ben & Jerry's.

17

## II.     Plaintiff has not stated a claim for breach of express warranty.

Plaintiff's breach-of-warranty claim fails for the same reasons his consumer protection claim fails. As relevant here, an express warranty is "(1) a statement of fact or a promise made by the seller to the buyer relating to the goods, which 'becomes part of the basis of the bargain'; [or] (2) '[a]ny description of the goods which is made part of the basis of the bargain.'" *Centrella v. Ritz-Craft Corp. of Pennsylvania, Inc.*, 2017 WL 3720757, at *3 (D. Vt. June 28, 2017) (quoting Vt. Stat. Ann. tit. 9A, § 2-313). Plaintiff alleges that Ben & Jerry's warrantied that "the milk and cream in the Ben & Jerry's Products originated exclusively from 'happy cows' on 'Caring Dairy' farms …." (Compl. ¶ 112.)

As with the VCPA claim, "for a statement or representation to provide the basis for an express warranty claim, it still must meet the threshold requirement of 'be[ing] material to a reasonable consumer.'" *Solak v. Hain Celestial Group, Inc.*, 2018 WL 1870474, at *11 (N.D.N.Y. Apr. 17, 2018) (citing *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 985 (C.D. Cal. 2015)). If the representations "are insufficient as a matter of law to mislead a reasonable consumer, they cannot be relied upon by Plaintiff[] as grounds for asserting a breach of express warranty …." *Solak*, 2018 WL 1870474, at *11.

Plaintiff's warranty claim fails initially because he has not plausibly alleged that the statement on the carton, "We source … milk & cream from happy cows" is misleading to reasonable consumers. The phrase "happy cows" is non-actionable puffery. It is a vague, "generalized or exaggerated statement[]" that is not "objectively verifiable," and reasonable consumers would not interpret it as a fact-based claim upon which they could rely. *Hubbard v. Gen. Motors Corp.*, 1996 WL 274018, at *6 (S.D.N.Y. May 22, 1996); *Heath*, 915 A.2d at 1296.

Reasonable consumers know there is no way to verify whether a cow is "happy." Certainly, Plaintiff does not explain how he (or anyone) might try to measure this objectively.

Plaintiff's reliance on selected statements on Ben & Jerry's website regarding the Caring Dairy program as collectively constituting a "warranty" is equally flawed.[11] As discussed in section I, Plaintiff has not plausibly alleged that reasonable consumers would be misled by the statement "Basic standards for being a Caring Dairy farmer (required for all farmers)," (Compl. ¶ 29), given the full context of the statement. Moreover, Plaintiff has not shown that reasonable consumers would even have seen the above statement—or seen it without also seeing other clarifying information—even if they had visited the website before making a purchase. The website contains dozens of links and numerous pages that discuss the Caring Dairy program. As such, Plaintiff cannot show that reasonable consumers would have received the same "affirmation[s] of fact" and thus relied on the same information as he did as "part of the basis of the bargain." Vt. Stat. Ann. tit. 9A, § 2-313.

Even if the selected website statements could be construed as an express warranty, Plaintiff has not shown that reasonable consumers who purchased Ben & Jerry's ice cream because they were concerned about the humane treatment of cows failed to receive the benefit of their bargain. As stated above, Plaintiff has not pleaded facts to show that reasonable consumers purchasing the ice cream to support the humane treatment of cows are likely to be concerned that not all the milk and cream in the ice cream comes from cows on Caring Dairy farms, considering that these farms produce an output equivalent to Ben & Jerry's dairy requirements, and thus provide improved care for the *same number of cows* they would if all the dairy in the ice cream came from these farms.

---

[11] As discussed previously, the carton label refers consumers to the entire website, not to a specific page. Plaintiff's complaint provides no justification for cherry-picking statements on the website and twisting them out of context to comprise a "warranty."

Finally, Plaintiff's warranty claim fails because he has not alleged that he timely notified Ben & Jerry's of any alleged breach of warranty. Under Vermont law, "[w]here a tender has been accepted … the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Vt. Stat. Ann. tit. 9A, § 2-607(3)(a). Plaintiff alleges only that he purchased several varieties of Ben & Jerry's ice cream "[d]uring the class period." (Compl. ¶ 14.) There is no allegation that he contacted Ben & Jerry's to inform them of the alleged breach, much less when he did so. The fact that a similar lawsuit[12] previously had been filed against Ben & Jerry's did not put the company on notice of *Plaintiff's* particular claims. "As a buyer of the [ice cream] in this case, Plaintiff was required to inform Defendant, within a reasonable time, of the alleged breach involving his own purchase." *Singleton v. Fifth Generation, Inc.*, 2016 WL 406295, at \*12 (N.D.N.Y. Jan. 12, 2016) (dismissing express warranty claim for failure to plead timely notice).

For all these reasons, Plaintiff has not stated a claim for breach of express warranty.

### III.   Plaintiff has not stated a claim for unjust enrichment.

Plaintiff has not plausibly alleged a claim for unjust enrichment either. Unjust enrichment requires a plaintiff to plead that "'(1) a benefit was conferred on defendant; (2) defendant accepted the benefit; and (3) defendant retained the benefit under such circumstances that it would be inequitable for defendant not to compensate plaintiff for its value." *Gordon v. New England Central R.R., Inc.*, 2019 WL 5084160, at \*10 (D. Vt. Oct. 10, 2019) (quoting *Kellogg v. Shushereba*, 2013 VT 76, ¶ 31, 82 A.3d 1121, 1133 (citation omitted)). Plaintiff alleges that Ben & Jerry's "ha[s] been unjustly enriched through sales of Ben & Jerry's Products at the expense of Plaintiff" because "[u]nder the circumstances, it would be against equity and good conscience to

---

[12] The prior lawsuit is "similar" because it was brought by the same law firm as this action.

permit Defendants to retain the ill-gotten benefits that they received from Plaintiff Ehlers … in light of the fact that the [Products] [he] purchased were not what Unilever purported them to be." (Compl. ¶¶ 119-20.) Plaintiff's unjust-enrichment claim fails because, as with his VCPA and warranty claims, he has not plausibly alleged facts to show that reasonable consumers would be misled by the "happy cows" reference on the label or the information on Ben & Jerry's website. *See Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392 (E.D.N.Y. 2017) (dismissing unjust-enrichment claim as "duplicative" because it "relies on the same facts as [plaintiff's] other causes of action in tort"); *Elkind v. Revlon Consumer Prods. Corp.*, 2015 WL 2344134, at *14 (E.D.N.Y. May 14, 2015) (same); *Davis*, 297 F. Supp. 3d at 338 (same).

Plaintiff's claim also fails because "[u]njust enrichment is an equitable claim that is unavailable where an adequate remedy at law exists." *Federal Treasury Enter. Sojuzplodoimport v. Spirits Int'l N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010); *see Mansfield Heliflight, Inc. v. Freestream Aircraft USA, Ltd.*, 2019 WL 5081061, at *2 (D. Vt. Oct. 10, 2019) (finding that unjust enrichment "is not available" … "where it simply duplicates, or replaces, a conventional contract or tort claim[.]" (citation omitted)). Accordingly, Plaintiff's unjust-enrichment claim should be dismissed.

## IV.    Plaintiff is not entitled to injunctive relief.

Plaintiff seeks an order imposing an injunction against the alleged "unlawful and deceptive acts and practices, and requiring that Ben & Jerry's remove and refrain from making representations on the Products' packaging or elsewhere that the milk and cream in the Products originates from 'happy cows' on 'Caring Dairy' farms." (Compl., Prayer for Relief.) A plaintiff lacks standing to pursue injunctive relief if he is unable to establish a "real or immediate threat" of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Although past injury may

establish standing to seek money damages, it does not confer standing to seek injunctive relief "unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016); *Marino v. Coach, Inc.*, 264 F. Supp. 3d 558, 565 (S.D.N.Y. 2017) (finding that "[a] plaintiff seeking injunctive relief cannot rely on past injury," but "must allege a likelihood of future harm") (citing *Harty v. Simon Prop. Grp., L.P.*, 428 F. App'x 69, 71 (2d Cir. 2011))). Moreover, a "named plaintiff[] in [a class] action must [himself] have standing to seek injunctive relief." *Dodge v. Cnty. of Orange*, 103 F. App'x 688, 690 (2d Cir. 2004).

Plaintiff lacks standing to seek injunctive relief. Plaintiff alleges that he purchased more of Ben & Jerry's ice cream and/or paid more than he otherwise would have paid absent the alleged misrepresentations. (Compl. ¶¶ 10, 12, 104, 107.) But he now knows that not all the milk and cream in Ben & Jerry's ice cream comes from Caring Dairy farms and therefore he could not be misled again (assuming he was misled to begin with). As such, there is no real or immediate threat of any future injury. *See, e.g.*, *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 309 (S.D.N.Y. 2017), *aff'd*, 710 F. App'x 43 (2d Cir. 2018) ("[B]y stating that he would not have bought the Inserts had he 'known the truth' about the allegedly deceptive marketing, Plaintiff essentially concedes that he will not buy the Inserts, or be misled by Defendants' marketing, again in the future."); *Marino*, 264 F. Supp. 3d at 565 (finding lack of standing for injunctive relief for the same reason); *Davis*, 297 F. Supp. 3d at 338-39 (same); *Elkind*, 2015 WL 2344134, at *3 (same). Because Plaintiff lacks standing to seek injunctive relief for himself, he also cannot pursue injunctive relief on behalf of a class. *Nicosia*, 834 F.3d at 239 ("A plaintiff seeking to represent a class must personally have standing." (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996))).

There is no real or immediate threat of future injury for the additional reason that the phrase "happy cows" was removed from the back of the carton many months ago and has or will cease to appear on any store shelves in the near future. (*See* Judge Decl., Ex. B.) Ben & Jerry's removed it as part of a redesign of the packaging made necessary by new FDA requirements to modify the Nutrition Facts panel on the label.[13] With the challenged statement no longer on the label, there is no threat of future injury to Plaintiff—or to any member of the classes he seeks to represent.

Accordingly, Plaintiff lacks standing to seek injunctive relief.

<u>**CONCLUSION**</u>

For all the foregoing reasons, Ben & Jerry's respectfully requests that the Court dismiss Plaintiff's Class Action Complaint.

Dated: January 13, 2020

Respectfully submitted,

DOWNS RACHLIN MARTIN PLLC

By: */s/ Walter E. Judge, Jr.*
       Walter E. Judge, Jr.

199 Main Street, P.O. Box 190
Burlington, Vermont 05402-0190
Telephone: 802-863-2375
Facsimile: 802-862-7512
wjudge@drm.com

James P. Muehlberger (*pro hac admission pending*)
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547
jmuehlberger@shb.com

---

[13] *See Changes to the Nutrition Facts Label*, https://www.fda.gov/food/food-labeling-nutrition/changes-nutrition-facts-label. Manufacturers with large sales were required to switch to the new label format no later than January 1, 2020. Ben & Jerry's began shipping cartons with the new labels in the summer of 2019.

Buffy J. Mims (*admitted pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
1800 K Street NW, Suite 1000
Washington, D.C. 20006
Telephone: 202-783-8400
Facsimile: 202-783-4211
bmims@shb.com

*Attorneys for Defendants Ben & Jerry's*
*Homemade, Inc.*, *and Conopco, Inc., d/b/a*
*"Unilever"*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2020, the foregoing document was served upon all counsel of record via the Court's electronic filing system.

*/s/ Walter E. Judge, Jr.*