U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2020 MAY -7 PM 2:00

CLERK

BY [signature] DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

JAMES EHLERS, *on behalf of himself and all others similarly situated*,

Plaintiff,

v.

BEN & JERRY'S HOMEMADE INC., and CONOPCO INC. d/b/a UNILEVER UNITED STATES,

Defendants.

Case No. 2:19-cv-00194

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**
(Doc. 9)

Plaintiff James Ehlers brings this action on behalf of a proposed class of similarly situated individuals against Ben & Jerry's Homemade Inc., ("Ben & Jerry's") and Conopco Inc., d/b/a Unilever United States ("Unilever" and collectively, "Defendants") alleging that Defendants' statements on Ben & Jerry's ice cream cartons and website that Ben & Jerry's sources dairy products from "happy cows" on "Caring Dairy" farms are materially misleading. Plaintiff alleges three causes of action against Defendants: violation of the Vermont Consumer Protection Act ("VCPA"), 9 V.S.A. §§ 2451-2480g (Count I); breach of an express warranty (Count II); and unjust enrichment (Count III). In addition to compensatory damages, Plaintiff seeks injunctive relief.

Pending before the court is Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed on January 13, 2020, in which Defendants argue that the description of cows as "happy" is a nonactionable opinion statement; that the alleged misrepresentation on Ben & Jerry's website regarding Caring Dairy standards is not misleading or material; that Plaintiff fails to state plausible claims for breach of an express warranty or unjust enrichment; and that Plaintiff does not have standing to pursue injunctive relief on behalf

of himself or the proposed class. (Doc. 9.) On February 12, 2020, Plaintiff filed an opposition. Defendants filed a reply on February 26, 2020, at which time the court took the pending motion under advisement.

Plaintiff is represented by Kim Richman, Esq., Jay Shooster, Esq., and Joshua L. Simonds, Esq. Defendants are represented by Walter E. Judge, Jr., Esq., James P. Muehlberger, Esq., and Buffy J. Mims, Esq.

**I. Allegations in the Complaint.**

Plaintiff is a resident of Winooski, Vermont who purchases a variety of Ben & Jerry's ice creams from a Shaw's supermarket in Colchester, Vermont. Ben & Jerry's is an ice cream manufacturer incorporated in Vermont with its principal place of business in Burlington, Vermont and is a wholly owned subsidiary of Unilever, which is a New York corporation with its principal place of business in Englewood Cliffs, New Jersey. Plaintiff alleges that the court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA") because the proposed class involves more than 100 members, because there is diversity of citizenship between Plaintiff and Unilever, and because the amount in controversy exceeds the sum of $5,000,000.

Ben & Jerry's was founded in 1978 in Burlington, Vermont by Ben Cohen and Jerry Greenfield. Plaintiff asserts that Ben & Jerry's rose to prominence in the 1980s and 1990s as a socially conscious, Vermont-based company which attracted consumers due to "the brand and all that it represented[.]" (Doc. 1 at 1, ¶ 2.) Plaintiff further alleges that Ben & Jerry's "reputation for being socially and environmentally conscious" was a "valuable and significant component of Unilever's acquisition of the brand[.]" *Id.* at 2, ¶ 4. Even though Mr. Cohen and Mr. Greenfield are no longer involved in the day-to-day management of Ben & Jerry's, Plaintiff asserts that Unilever "continues to capitalize" on Ben & Jerry's goodwill and reputation. *Id.* at 2, ¶ 6.

Plaintiff alleges that in the "past several years," Unilever has breached consumers' trust by representing on Ben & Jerry's ice cream packaging and website that Ben & Jerry's products are "sourced exclusively from 'happy cows' on Vermont dairies that participate in a special, humane 'Caring Dairy' program." *Id.* at 2, ¶ 7. This

representation is allegedly material to consumers who choose to purchase Ben & Jerry's products and who view Ben & Jerry's as a socially conscious, independent Vermont company. In reality, however, Plaintiff asserts that only a percentage of the milk used in Ben & Jerry's products is sourced from the Caring Dairy program, while the remainder comes from mass-production dairy operations, purportedly "exactly what consumers who choose Ben & Jerry's Products would like to avoid." *Id.* at 2-3, ¶ 8.

Ben & Jerry's ice cream packaging, signage in its retail locations, and take-away cups "present the Products as made with milk produced by 'happy cows'" and feature cartoon images of happy cows in green fields under blue skies in order to depict "happy animals." *Id.* at 6, ¶ 25. Plaintiff asserts these representations are prominent on Ben & Jerry's packaging and therefore necessarily seen by consumers. The text on the back of Ben & Jerry's cartons of ice cream states in relevant part: "We strive to make the best possible ice cream in the best possible way. We source Non-GMO ingredients, Fairtrade cocoa & sugar, eggs from cage-free hens & milk & cream from happy cows. Learn more at benjerry.com." (Doc. 1 at 7, ¶ 25.)

The "benjerry.com" website to which the cartons direct consumers explains that "happy cows" are part of the Caring Dairy program, "a unique program that's helping farmers move toward more sustainable practices on the farm." *Id.* at 7, ¶ 27 (internal quotation marks and footnote omitted). Plaintiff alleges that these Caring Dairy representations are supported by assurances on the website which promote Ben & Jerry's "values-led sourcing" as well as its attempts to "reduce the environmental impact of our business." *Id.* at 7-8, ¶ 28 (internal quotation marks omitted). According to the "Caring Dairy" webpage, Caring Dairy "respects the farmer and their farmworkers, the planet and the cow[,]" *id.* at 9, ¶ 30 (internal quotation marks omitted), and further:

> provides our farmers a program for evaluating, implementing and continuously improving sustainable agricultural practices on their farms. Our belief is that the future of dairy farming is to build soil health that includes increased cover crops, alternative tilling practices, rotational crops and grazing techniques. We also believe that high quality animal care is fundamental to the success of a farm, a well-cared for cow will produce a higher quality milk. And of course the importance of labor that supports the

> entire farm, from the farmer to the farmworker.

*Id.* at 9, ¶ 31 (footnote omitted).

Plaintiff asserts that "[u]ntil recently, and during the class period, Unilever's Ben & Jerry's website—the address of which is displayed to explain the 'happy cows' representation—told consumers that the 'Caring Dairy' program is 'required for all farmers.'" *Id.* at 8, ¶ 29. At the time, a webpage titled "Caring Dairy Standards" stated:

> Basic standards for being a Caring Dairy farmer (required for all farmers)
>
> The basic standards are specific to Cow Care, Planet Stewardship, and the Farmer & Farm Worker. In order to be a Caring Dairy farmer, all these standards must be met. All farms will undergo a third[-]party verification by Where Food Comes From, to evaluate how each farm is meeting the required Standards. For a farm to be considered a Caring Dairy farm, they must meet the Basic Standards for participation. From there, farms can strive for Silver or Gold level recognition and receive[] a larger compensation for their achievement.

(Doc. 1 at 8, ¶ 29.) Plaintiff concedes that Unilever "appears to have removed this representation" after a non-profit organization filed a lawsuit against Ben & Jerry's in the District of Columbia Superior Court, alleging the phrase constituted a misrepresentation. *Id.*

Plaintiff alleges that Defendants' statements are "offered to explain the 'happy cows' of [Ben & Jerry's] Products' packaging" and are intended to project to consumers an "image of animal husbandry" that is more environmentally friendly than typical mass dairy production. *Id.* at 10, ¶ 34. Plaintiff asserts that when purchasing Ben & Jerry's products, he relied on these representations, as well as a "Caring Dairy" video on the website, which he understood to mean that the Ben & Jerry's ice cream he purchased was made with milk and cream "sourced exclusively from these 'happy cows' on 'Caring Dairy' farms." *Id.* at 4, ¶ 16.

In contrast to "what Unilever has told consumers," *id.* at 5, ¶ 24, Ben & Jerry's products are allegedly sourced from a mixture of Caring Dairy farms and mass-production facilities, including through a dairy cooperative in St. Albans, Vermont that has more than 360 members. As of January of 2017, Plaintiff alleges only ninety

members, or less than twenty-five percent, were verified Caring Dairy farms. When processing the milk, St. Albans does not distinguish between the Caring Dairy farms and the mass-production facilities so that a "large percentage" of the milk and cream used in Ben & Jerry's products is thus allegedly sourced from the mass-production farms. *Id.* at 11, ¶ 40. Because the mass-production facilities allegedly employ "intensive cow confinement practices and extensive antibiotic use," Defendants' use of milk and cream from sources other than Caring Dairies allegedly constitutes a material omission. (Doc. 1 at 11, ¶ 41.)

Plaintiff further contends that Unilever knew that reasonable consumers relied on its representations and intended for consumers to purchase Ben & Jerry's products when they "might otherwise purchase a competing ice cream product," *id.* at 13, ¶ 50, and further knew consumers would pay more for products that were represented as socially responsible, thereby increasing the sales of Ben & Jerry's products while decreasing the sales of competitor products. Unilever has thus allegedly "profited enormously to the detriment of consumers from its falsely marketed products and its carefully orchestrated image for the Ben & Jerry's brand." *Id.* at ¶ 52.

According to the Complaint, Unilever "continues to conceal and suppress the true nature, identity, source, and method of production of the Ben & Jerry's Products." *Id.* at ¶ 54. As a result, Plaintiff argues that he and the proposed class will continue to suffer injury because they "can no longer rely on the truth and accuracy of Ben & Jerry's Products" and are "prevented from making a meaningful and informed choice" as they continue to purchase "deceptively labeled and packaged Products sold at prices above their true market value." *Id.* at 14, ¶ 57. Plaintiff requests "an injunction against Defendants' unlawful and deceptive acts and practices, and requiring that Defendants remove and refrain from making representations on the Ben & Jerry's Products' packaging or elsewhere that the milk and cream in the Products originates from 'happy cows' on 'Caring Dairy' farms[.]" *Id.* at 21, ¶ E.

## II. Whether the Court May Consider Documents External to the Complaint.

Both parties cite to documents in their briefs that are neither cited in nor attached

to the Complaint, including statements from sections of Ben & Jerry's website. In reviewing a complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court is generally limited to the facts "contained within the four corners of the complaint[.]" *Goldberg v. Danaher*, 599 F.3d 181, 183 (2d Cir. 2010). A court may, however, also review "any statements or documents incorporated in [the complaint] by reference[] and any document not incorporated but that is, nevertheless, integral to the complaint because the complaint relies heavily upon its terms and effect." *Yung v. Lee*, 432 F.3d 142, 146 (2d Cir. 2005) (citations and internal quotation marks omitted). To be "integral" to the Complaint, a plaintiff must "*rely* on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (internal quotation marks omitted) (emphasis in original) (quoting *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006)).

The representations made in Ben & Jerry's website are integral to the Complaint and provide the factual basis for some of Plaintiff's claims. The Ben & Jerry's website, including documents linked therein, are thus properly before the court in adjudicating Defendants' motion to dismiss. *See id.* at 234 (holding district court properly determined parts of a website were integral to the complaint where the plaintiff "alleges injuries on the basis of the purchases made on Amazon, made possible only via clicking 'Place your order' on the Order Page"); *Derbaremdiker v. Applebee's Int'l, Inc.*, 519 F. App'x 77, 78 (2d Cir. 2013) (considering sweepstakes rules on a website referenced on a receipt because the complaint referred to the rules).

## III. Conclusions of Law and Analysis.

### A. Standard of Review.

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Twombly*,

550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a plaintiff's complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* (citation omitted). Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff's claims will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

**B. Whether Plaintiff Plausibly Pleads a VCPA Claim (Count I).**

Because this court sits in diversity, it applies Vermont's substantive law. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."). The VCPA prohibits "unfair or deceptive acts or practices in commerce[.]" 9 V.S.A. § 2453(a). To plead a plausible claim for relief under the VCPA, Plaintiff must allege that he "'contract[ed] for goods or services in reliance upon false or fraudulent representations or practices prohibited by [§] 2453" or "sustain[ed] damages or injury as a result of any false or fraudulent representations or practices prohibited by [§] 2453[.]'" *Glassford v. Dufresne & Assocs., P.C.*, 2015 VT 77, ¶ 30, 199 Vt. 422, 438, 124 A.3d 822, 833 (quoting 9 V.S.A. § 2461(b)).

A deceptive act or practice is: (1) "a representation, practice[,] or omission likely to mislead" a consumer; (2) that the consumer "interpreted . . . reasonably under the circumstances"; and (3) that has "material" misleading effects which are "'likely to affect

[the consumer's] conduct or decision with regard to a product.'" *Vastano v. Killington Valley Real Estate*, 2007 VT 33, ¶ 8, 182 Vt. 550, 551, 929 A.2d 720, 722 (quoting *Greene v. Stevens Gas Serv.*, 2004 VT 67, ¶ 15, 177 Vt. 90, 97, 858 A.2d 238, 244). "Misrepresentations involving facts are actionable while those involving opinions are not." *Otis-Wisher v. Fletcher Allen Health Care, Inc.*, 951 F. Supp. 2d 592, 603 (D. Vt. 2013), *aff'd sub nom. Otis-Wisher v. Medtronic, Inc.*, 616 F. App'x 433 (2d Cir. 2015).

In support of his VCPA claim, Plaintiff alleges that Defendants have engaged in unfair and deceptive acts in commerce by "representing to consumers that the milk and cream in Ben & Jerry's Products is sourced exclusively from 'happy cows' on 'Caring Dairy' farms that meet specific and verifiable criteria" while omitting information about the percentage of milk that originates from mass-production dairy operations. (Doc. 1 at 18, ¶ 102.) Defendants seek dismissal of Plaintiff's VCPA claim for three reasons: (1) "happy cows" constitutes opinion rather than fact; (2) neither Ben & Jerry's ice cream cartons nor its website contains misleading statements regarding "happy cows" or "Caring Dairies"; and (3) a reasonable consumer would not consider the alleged misrepresentations to be material.

**1. Whether Plaintiff Plausibly Pleads that the Alleged Misrepresentation Was Misleading.**

Plaintiff does not contest that "happy cows" constitutes a non-actionable opinion and asserts that his "true claim" focuses on the website's representation that "'Caring Dairy' standards are required of all farmers whose happy cows supply milk and cream for Ben & Jerry's Products." (Doc. 17 at 10-11) (internal quotation marks omitted). A statement is misleading under the VCPA if it is "likely to mislead a reasonable consumer." *Lofts Essex, LLC v. Strategis Floor & Décor Inc.*, 2019 VT 82, ¶ 32, 224 A.3d 116, 127; *see also Lang McLaughry Spera Real Estate, LLC v. Hinsdale*, 2011 VT 29, ¶ 34, 190 Vt. 1, 17, 35 A.3d 100, 111 ("[T]he standards for consumer fraud are objective to be judged from the standard of a reasonable consumer."). It is "'well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer.'" *Chufen Chen v. Dunkin' Brands, Inc.*,

954 F.3d 492, 500 (2d Cir. 2020)[1] (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)). The Second Circuit has "repeatedly observed that 'in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial.'" *Id.* at 501 (quoting *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019)); *see also Jordan v. Nissan N. Am., Inc.*, 2004 VT 27, ¶ 8, 176 Vt. 465, 470, 853 A.2d 40, 44 (holding lower court properly instructed jury on how to determine "whether a representation is deceptive because [it] required the jury to consider the overall impression left by defendants' communications").

Plaintiff identifies the following heading on Ben & Jerry's website as the basis for his VCPA claim: "Basic standards for being a Caring Dairy farmer (required for all farmers)[.]" (Doc. 1 at 8, ¶ 29.) Read in a vacuum, a reasonable consumer might interpret this phrase to mean that Caring Dairy farmer standards apply to all farmers who supply Ben & Jerry's. It may also, however, be interpreted as applying to all farmers who seek to have their farms designated as a "Caring Dairy." The court need not resolve this conflict because the website as a whole makes it clear that the section, titled "Caring Dairy Standards[,]" sets forth the "basic" standards "to be considered a Caring Dairy farm" as well as the detailed eligibility requirements for "Silver" and "Gold" tier status. (Doc. 9-2 at 2.) A farm "that aspire[s] to achieve these [Silver and Gold] standards" is entitled to certain levels of compensation from Ben & Jerry's. *Id.* at 4. The website includes a chart of the 2016 Caring Dairy farms, noting there were a total of eighty-five "[p]articipating [f]arms[.]" *Id.* at 7. Nothing in the section that follows the phrase "required for all farmers" represents that Ben & Jerry's products are sourced exclusively from Caring Dairy farms.

By focusing on an alleged representation that Ben & Jerry's products are "sourced exclusively from 'happy cows' on Vermont dairies that participate in a special, humane

[1] In *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020), the Second Circuit applied N.Y. Gen. Bus. L. §§ 349(a) and 350. Like the VCPA, New York law analyzes "deceptive acts" using a "reasonable consumer" standard. *Id.* (citation and internal quotation marks omitted).

'Caring Dairy' program[,]" (Doc. 1 at 2, ¶ 7), Plaintiff bases his claim on a representation that is neither contained on Ben & Jerry's ice cream cartons nor on its website. *See Fink*, 714 F.3d at 742 ("A plaintiff who alleges that he was deceived by an advertisement may not misquote or misleadingly excerpt the language of the advertisement in his pleadings and expect his action to survive a motion to dismiss[.]"). In the absence of this actual statement, the court considers whether it is a reasonable interpretation of the statements that *do* appear on Ben & Jerry's products and website.

The ice cream carton label which Plaintiff asserts leads consumers to the alleged misrepresentation states that: "We strive to make the best possible ice cream in the best possible way. We source Non-GMO ingredients, Fairtrade cocoa & sugar, eggs from cage-free hens & milk & cream from happy cows. Learn more at benjerry.com." (Doc. 1 at 7, ¶ 25.) Plaintiff identifies no portion of the foregoing statement that is false. The product labeling directs consumers to "[l]earn more at benjerry.com" rather than to the specific "Caring Dairy Standards" webpage identified by Plaintiff. *Id.*

The benjerry.com website, in turn, describes the Caring Dairy program as one that "participating farms" join "voluntarily[.]" (Doc. 9 at 13); *see also* Doc. 21-5 at 3 (noting "[f]arms join the Caring Dairy program voluntarily, and for their efforts they receive an additional premium on top of their regular milk price"). The "How We Make Ice Cream" webpage states that the St. Albans dairy cooperative is comprised of "hundreds of local farms" (Doc. 21-2 at 4), well in excess of the eighty-five Caring Dairy farms identified on the "Caring Dairy Standards" webpage. In addition, Ben & Jerry's Social and Environmental Assessment Reports ("SEARs") from 2011 through 2018, which are available by link from the Ben & Jerry's website's homepage, reveal that the number of participating Caring Dairy farms fluctuates each year.[2]

While Plaintiff is correct that reasonable consumers should not be required to

---

[2] The 2014 SEAR Report further states: "From a volume perspective, Caring Dairy™ covers our global production needs but our intention is to have all dairy suppliers that Ben & Jerry's sources from operating under the Caring Dairy™ program in the not-too-distant future." (Doc. 9 at 14.)

search through the website and SEARs to clarify a heading on a webpage, it is equally unreasonable for a consumer to interpret a single phrase in a single heading without reference to the contents of the section that immediately follow the heading. Context is crucial especially where, as here, Plaintiff cannot point to an actual misrepresentation, but instead relies exclusively on his interpretation of a phrase he characterizes as conveying the *impression* that all of Ben & Jerry's products are "sourced exclusively" from "Caring Dairies."[3]

It is Plaintiff's burden to plausibly allege that the Ben & Jerry's ice cream carton or website contains a statement that "conveys more than one meaning to reasonable consumers and one of those meanings is false[.]" *Lofts Essex, LLC*, 2019 VT 82, at ¶ 34, 224 A.3d at 127 (quoting *Carter v. Gugliuzzi*, 716 A.2d 17, 23 (Vt. 1998)). "[A] representation does not become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (citation and internal quotation marks omitted). Because neither Ben & Jerry's products nor its website represents that its ingredients are "sourced exclusively" from Caring Dairy farms, Plaintiff's entire claim is grounded on a single phrase in a single heading on a multipage website which is neither false nor misleading when considered as a whole.

### 2. Whether Plaintiff Plausibly Pleads that the Alleged Misrepresentation Was Material.

Even if Plaintiff could identify a false or misleading statement, he has failed to adequately plead any misrepresentation is "material." A misrepresentation is material if it

[3] *See Chufen Chen*, 954 F.3d 492 at 501 (noting "context is crucial" to determine "whether a reasonable consumer would have been misled by a particular advertisement" and drawing on full television commercial to interpret the word "steak" used in commercials) (citation omitted); *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 922-23 (N.D. Ill. 2017) (granting a motion to dismiss claims when consumers could determine the meaning of the phrase "100% Grated Parmesan Cheese" from reading an ingredients list on the label and noting "even if a statement on a package or advertisement might be ambiguous or unclear in isolation, 'the presence of a disclaimer or similar clarifying language may defeat a claim of deception'") (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013)).

is "likely to affect the consumer's conduct or decision with regard to a product." *Greene*, 2004 VT 67, at ¶ 15, 177 Vt. at 97, 858 A.2d at 244 (citation omitted). Materiality is "'generally measured by an objective standard, premised on what a reasonable person would regard as important in making a decision.'" *PH W. Dover Prop., LLC v. Lalancette Eng'rs*, 2015 VT 48, ¶ 11, 199 Vt. 1, 5, 120 A.3d 1135, 1138 (quoting *Vastano*, 2007 VT 33, at ¶ 9, 182 Vt. at 551, 929 A.2d at 722).

Plaintiff alleges that the misleading impression that all of Ben & Jerry's milk and cream is sourced exclusively from "happy cows" on "Caring Dairy" farms portrays "Ben & Jerry's Homemade Inc. as a socially conscious, independent Vermont company" (Doc. 1 at 3, ¶ 9) and "prompt[s] consumers to buy more Ben & Jerry's Products, and to pay more for them than they otherwise would." *Id.* at 3, ¶ 10; *see also id.* at 5, ¶ 21. The Caring Dairy program, however, indisputably encourages the humane treatment of animals, and the Ben & Jerry's website discloses to consumers that participation in the program is voluntary. Nowhere on either Defendants' labeling or the website is the representation that Ben & Jerry's products are "sourced exclusively" from Caring Dairy farms.

Although Plaintiff argues that materiality is a question of fact which should not be resolved on a motion to dismiss unless the misrepresentations "are so obviously unimportant . . . that reasonable minds could not differ on the question of their importance[,]" *ECA & Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009) (citation omitted), materiality is "a mixed question of law and fact" and is not "immune from analysis at the motion to dismiss stage. Where Plaintiff's allegations do not, as a matter of law, establish materiality, dismissal is appropriate." *Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, 886 F. Supp. 2d 328, 337 (S.D.N.Y. 2012) (citation and internal quotation marks omitted); *see also ECA*, 553 F.3d at 202 (affirming dismissal of claims on motion to dismiss where plaintiffs did not plead disclosures were material); *Silberstein v. Aetna, Inc.*, 2015 WL 1424058, at *12 (S.D.N.Y. Mar. 26, 2015) (dismissing claims on motion to dismiss where "the vast majority of Plaintiff's allegations

are facially insufficient to state a claim because there is no plausible showing that the misstatements or omissions were material").

Accepting the facts pled in the Complaint as true, Plaintiff does not plausibly allege reasonable consumers would make their purchasing decisions exclusively based on a single phrase in a single webpage heading contained in a website that a consumer would need to access in advance of or contemporaneously with his or her purchasing decision. Because Plaintiff has failed to plausibly allege the essential elements of a VCPA claim, the court GRANTS Defendants' motion to dismiss Count I.

**C. Whether Plaintiff Plausibly Pleads a Claim for Breach of an Express Warranty (Count II).**

Defendants argue that Plaintiff fails to state a claim for breach of an express warranty because Plaintiff has not plausibly alleged a materially misleading factual representation. In addition, Defendants contend that Plaintiff has not plausibly pled that he timely notified Defendants of any breach or that reasonable consumers who purchased Ben & Jerry's ice cream "failed to receive the benefit of their bargain." (Doc. 9 at 19.)

Under Vermont law, an express warranty is created under the following circumstances:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise[;] (b) [a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description[;] [or] (c) [a]ny sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

9A V.S.A. § 2-313(1).

Defendants argue that the alleged misrepresentation is not an affirmation of fact or description of goods that could create an express warranty. The court agrees for the same reasons that it found Plaintiff's VCPA claim not plausible. Under Vermont law, the standard for evaluating the test for an express warranty is an objective one. *See* 9A V.S.A. § 2-313, cmt. 8 (stating to determine whether a warranty is created absent formal language such as "warrant" or "guarantee[,]" "the basic question remains the same: What

statements of the seller have in the circumstances and in objective judgment become part of the basis of the bargain?"). "[A]n affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." 9A V.S.A. § 2-313(2).

In this case, Plaintiff alleges Defendants provided written "warranties that the milk and cream in the Ben & Jerry's Products originated exclusively from 'happy cows' on 'Caring Dairy' farms that me[t] verifiable criteria." (Doc. 1 at 20, ¶ 112.) Because that statement is neither contained on Ben & Jerry's labeling nor set forth on its website, it is not the "basis of the bargain" and no reasonable consumer would believe that statement constitutes a written warranty as to the nature of the goods purchased. *See* 9A V.S.A. § 2-313(1).

Moreover, under Vermont law, "[w]here a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]" 9A V.S.A. § 2-607(3)(a). Courts have found the failure to plead the condition precedent of notice of breach is grounds for dismissal. *See, e.g., Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 144 (E.D.N.Y. 2018) (dismissing breach of warranty claim where the complaint "makes no allegations and states no facts showing that notice was provided to defendant") (citation omitted); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (dismissing warranty claim for failure to allege timely notice of breach under New York's notice statute, which is similar to Vermont's).

Plaintiff argues that his Complaint serves as notice of the breach of warranty and that timeliness must be determined by a jury. Although "[t]he timeliness of notice under 9A V.S.A. § 2-607(3)(a) is ordinarily a question of fact for the trier[,]" *Agway, Inc. v. Teitscheid*, 472 A.2d 1250, 1253 (Vt. 1984), allowing the Complaint to serve as notice of breach would deprive Defendants of the opportunity to cure their alleged defect or prepare a defense. For this reason, in at least one case, the Vermont Supreme Court has rejected the filing of a complaint as sufficient. *See, e.g., Desilets Granite Co. v. Stone Equalizer Corp.*, 340 A.2d 65, 67 (Vt. 1975) (holding a complaint did not serve as notice

of revocation of acceptance where it was filed at the same time as acceptance because "the principal policy behind the rejection notice requirement is to give the seller an opportunity to cure or permit him to assist in minimizing the buyer's losses"); *see also Agway*, 472 A.2d at 1252 (noting remedies for breach of contract and warranty are "predicated upon the notice required in 9A V.S.A. § 2-607(3)"); 18 Williston on Contracts 52:42 (4th ed. 2019) ("Generally, the fact that the buyer has filed an action seeking damages for the breach of warranty has not been regarded as tantamount to the statutory notice since it usually does not give the seller an advance opportunity to collect the evidence needed for a defense[.]").

Even if Plaintiff could plausibly plead a material breach and notice, he has not and cannot plausibly plead that the products he purchased had no value because of the alleged breach of warranty. He must instead plead the difference between the value of the product as represented and the value of what he received. *See* 9A V.S.A. § 2-714(2) ("The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."). Without plausible allegations of causation and damages, his express warranty claim must fail. *See Centrella v. Ritz-Craft Corp. of Pa., Inc.*, 2017 WL 3720757, at *4 (D. Vt. June 28, 2017) ("[T]o establish a breach of both express and implied warranties, [plaintiffs] must prove proximate cause."); *Blodgett Supply Co. v. P.F. Jurgs & Co.*, 617 A.2d 123, 127 (Vt. 1992) ("Damages for breach of warranties by sellers of a business should be the 'loss of the bargain—the difference between the worth of the article as represented and that as actually delivered.'") (quoting *Coleco Indus., Inc. v. Berman*, 567 F.2d 569, 577 (3d Cir. 1977)).

Because Plaintiff fails to plausibly plead the essential elements of a breach of express warranty claim, the court GRANTS Defendants' motion to dismiss Count II.

**D. Whether Plaintiff Plausibly Pleads a Claim for Unjust Enrichment (Count III).**

Defendants seek dismissal of Plaintiff's unjust enrichment claim because Plaintiff

has an adequate remedy at law and fails to state a claim for which relief may be granted. Plaintiff counters that he may plead in the alternative pursuant to Fed. R. Civ. P. 8(d) that he is entitled to recover on his equitable unjust enrichment claim "to whatever extent that [he] is not fully compensated by recovery at law." (Doc. 17 at 24.)

To state a claim for unjust enrichment under Vermont law, Plaintiff must allege that "'(1) a benefit was conferred on defendant; (2) defendant accepted the benefit; and (3) defendant retained the benefit under such circumstances that it would be inequitable for defendant not to compensate plaintiff for its value.'" *Kellogg v. Shushereba*, 2013 VT 76, ¶ 31, 194 Vt. 446, 463, 82 A.3d 1121, 1133 (quoting *Ctr. v. Mad River Corp.*, 561 A.2d 90, 93 (Vt. 1989)). As an equitable remedy, an unjust enrichment claim lies only when "there is not an adequate remedy at law on the very subject in question." *Wynkoop v. Stratthaus*, 2016 VT 5, ¶ 50, 201 Vt. 158, 183-84, 136 A.3d 1180, 1196 (Eaton, J., concurring); *see also Moreau v. Sylvester*, 2014 VT 31, ¶ 20, 196 Vt. 183, 193, 95 A.3d 416, 423 ("Equity will not afford relief where there is a plain, adequate, and complete remedy at law.") (citation and internal quotation marks omitted).

"To be adequate the legal remedy must be able to provide complete relief for the case before the court and must be equally convenient, beneficial, and effective." *Wynkoop*, 2016 VT 5, at ¶ 18, 201 Vt. at 170, 136 A.3d at 1187. As a result, an unjust enrichment claim is not available "'where it simply duplicates, or replaces, a conventional contract or tort claim[.]'" *Mansfield Heliflight, Inc. v. Freestream Aircraft USA, Ltd.*, 2019 WL 5081061, at *2 (D. Vt. Oct. 10, 2019) (alteration in original) (quoting *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012)).

"In determining whether a quasi-contract should be implied under an equitable theory of unjust enrichment, the inquiry is whether, in light of the totality of the circumstances, equity and good conscience demand that the defendant return that which the plaintiff seeks to recover." *Brookside Mem'ls, Inc. v. Barre City*, 702 A.2d 47, 50 (Vt. 1997); *see also Wei Wang v. Shen Jianming*, 2019 WL 3254613, at *8 (D. Vt. July 19, 2019) ("Unjust enrichment is a quasi-contractual theory of liability, by which the law 'implies a promise to pay when a party receives a benefit and retention of the benefit

would be inequitable.'") (quoting *Brookside Mem'ls, Inc.*, 702 A.2d at 49).

"[I]n the alternative to [his] contract-based claims" (Doc. 1 at 20, ¶ 118), Plaintiff alleges that Defendants have been unjustly enriched through the sale of Ben & Jerry's products "at the expense of Plaintiff Ehlers and the Class members" as the "intended, direct, and proximate result of Defendants' conduct[.]" *Id.* at 21, ¶ 119. Therefore, Plaintiff contends "it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received . . . in light of the fact that the Ben & Jerry's Products they purchased were not what Unilever purported them to be." *Id.* at 21, ¶ 120. Because Plaintiff's unjust enrichment claim relies on the same alleged misrepresentations as his other claims, his claim is wholly duplicative. *See Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 338 (E.D.N.Y. 2018) (dismissing unjust enrichment claim premised on defendants' retention of "benefits and monies because the Products were not as represented" as duplicative where the claim was "no different from [the plaintiff's] claims for false advertising or fraudulent misrepresentation") (internal quotation marks omitted); *Elkind v. Revlon Consumer Prods. Corp.*, 2015 WL 2344134, at *14 (E.D.N.Y. May 14, 2015) (dismissing unjust enrichment claim for failure to demonstrate how it was "in any way distinct" from deceptive advertising, negligent and intentional misrepresentation, and breach of express warranty claims).

Fed. R. Civ. P. 8(d)(3)'s allowance for pleading in the alternative may, however, save Plaintiff's equitable claim in the event his actions at law are dismissed. *See Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016) ("[T]he plaintiff is at liberty to plead different theories, even if they are inconsistent with one another, and the court must accept each sufficiently pleaded theory at face value, without regard to its inconsistency with other parts of the complaint.") (citing Fed. R. Civ. P. 8(d)(3)). "'[T]he most significant requirement for a recovery on quasi contract is that the enrichment to the defendant be unjust.'" *DJ Painting, Inc. v. Baraw Enters., Inc.*, 776 A.2d 413, 417 (Vt. 2001) (quoting *Ray Reilly's Tire Mart, Inc. v. F.P. Elnicki, Inc.*, 537 A.2d 994, 995 (Vt. 1987)). The unjustness inquiry "focuses on the value of the benefit actually conferred upon the defendant." *Id.* at 416 n.2 (quoting *In re Estate of Elliott*, 542 A.2d 282, 285-86

n.2 (Vt. 1988)); *see also* Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. d ("Restitution is concerned with the receipt of benefits that yield a measurable increase in the recipient's wealth.").

Here, Plaintiff's unjust enrichment claim is predicated on a single phrase in a single heading of a multipage website which does not contain the material misrepresentation Plaintiff cites as the basis of his claim. Although Plaintiff alleges that Unilever "knew and intended that consumers would pay more for products that were represented as humane and/or socially responsible, furthering Unilever's private interest of increasing sales of its Ben & Jerry's Products and decreasing the sales of products that are truthfully marketed by its competitors[,]" (Doc. 1 at 13, ¶ 51), and that "Unilever has profited enormously to the detriment of consumers from its falsely marketed products and its carefully orchestrated image for the Ben & Jerry's brand[,]" *id.* at ¶ 52, Plaintiff does not further claim that the Ben & Jerry's ice cream he purchased had no value, that it would be equitable to allow him to both keep the ice cream and obtain a return of its purchase price, or that Ben & Jerry's does not source at least some of its ingredients in a humane and socially responsible way.

Because Plaintiff does not plausibly plead that "defendant retained [a] benefit [conferred by Plaintiff] under such circumstances that it would be inequitable for defendant not to compensate plaintiff for its value[,]" *Kellogg*, 2013 VT 76, at ¶ 31, 194 Vt. at 463, 82 A.3d at 1133 (citation omitted), Defendants' motion to dismiss Plaintiff's unjust enrichment claim (Count III) is GRANTED.

**E. Whether Plaintiff Has Standing to Pursue Injunctive Relief.**

Defendants argue that Plaintiff lacks standing to pursue injunctive relief on behalf of himself or the proposed class because the phrase "happy cows" was removed from Ben & Jerry's ice cream cartons "many months ago[.]" (Doc. 9 at 23.) In addition, it appears undisputed that the heading on the Caring Dairy program webpage on Ben & Jerry's website has been revised.

To have standing to pursue injunctive relief, a plaintiff must "show that he 'has sustained or is immediately in danger of sustaining some direct injury'" as the result of

the challenged conduct, and "the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983) (citations omitted). "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia*, 834 F.3d at 239 (citing *DeShawn E. ex rel. Charlotte E. v. Safir*, 156 F.3d 340, 344-45 (2d Cir. 1998)).

Defendants no longer use the term "happy cows" on Ben & Jerry's ice cream cartons, and Plaintiff alleges Unilever "appears to have removed" the website's reference to "required for all farmers" in the "Caring Dairy Standards" webpage heading. (Doc. 1 at 8, ¶ 29.)[4] As a result, any possibility of future deception of Plaintiff in a similar way to the harm alleged in the Complaint is non-existent. *See Nicosia*, 834 F.3d at 239 (holding plaintiff did not have standing for injunctive relief where the defendant ceased selling the product at issue).

Because Plaintiff does not have standing to pursue injunctive relief on his own behalf, he also cannot pursue injunctive relief on behalf of the proposed class. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) ("[N]amed plaintiffs who represent a class 'must allege and show that they personally have been injured[.]'") (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)); *Nicosia*, 834 F.3d at 239 ("A plaintiff seeking to represent a class must personally have standing.").

For the foregoing reasons, the court GRANTS Defendants' motion to dismiss Plaintiff's request for injunctive relief due to lack of standing.

**F. Whether to Grant Plaintiff Leave to Amend.**

Pursuant to Fed. R. Civ. P. 15(a), courts "should freely give leave" to amend a complaint "when justice so requires." However, "[l]eave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy*

[4] The heading was revised to read "required for all farmers who participate in the program" in early 2019. (Doc. 9 at 8) (emphasis omitted).

*v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). Plaintiff is hereby GRANTED leave to amend within twenty (20) days of the date of this Opinion and Order consistent with the Federal Rules of Civil Procedure and this court's Local Rules.

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion to dismiss Plaintiff's claims WITHOUT PREJUDICE. (Doc. 9.) Plaintiff is hereby GRANTED leave to amend within twenty (20) days of the date of this Opinion and Order consistent with the Federal Rules of Civil Procedure and this court's Local Rules.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 7th day of May, 2020.

Christina Reiss, District Judge
United States District Court